# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 07-CV-3478 (JFB) (ARL)

————————————

JANICE A. CRIPPEN,

Plaintiff,

VERSUS

TOWN OF HEMPSTEAD, CARMINE SALUTE, ANTHONY M. DISABATO, AMD & ASSOCIATES, INC., CARLOS JARAMILLO, MATCO REMODELING, INC., AND MATTHEW SCHWAN,

Defendants.

————————————

**MEMORANDUM AND ORDER**
March 25, 2009

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Janice A. Crippen ("Crippen" or "plaintiff") brought this action against the Town of Hempstead ("TOH"), Carmine Salute ("Salute") (collectively, the "Town Defendants"), Anthony M. DiSabato ("DiSabato"), AMD & Associates, Inc. ("AMD"), Carlos Jaramillo ("Jaramillo") (collectively, the "AMD Defendants"), Matco Remodeling, Inc. ("Matco") and Matthew Schwan ("Schwan") (collectively, the "Matco Defendants"), alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964 and violations of her due process rights under New York's Freedom of Information Law ("FOIL"), N.Y. Pub. Off. Law, § 86 *et seq.* At oral argument held on March 14,

2008, plaintiff voluntarily withdrew her federal RICO claim and New York State FOIL claim, thereby leaving no federal claims before this Court. However, plaintiff requested leave to amend the complaint to add a Section 1983 equal protection claim. Specifically, plaintiff amended the complaint to add a "class of one" equal protection claim pursuant to 42 U.S.C. § 1983. Plaintiff also alleges a variety of state law claims, including claims for breach of contract, negligence and fraud.

The Town Defendants and AMD Defendants (hereinafter, "defendants") have moved to dismiss the amended complaint.[1]

—————————

[1] As a procedural matter, with the consent of all parties, although defendants initially opposed the

For the reasons discussed below, defendants' motion to dismiss is denied as to the Section 1983 equal protection claim under the theory of "class of one" – which is the only remaining federal claim in this case. However, the Town Defendants' motion to dismiss the pendent state law claims against them is granted. The AMD Defendants' motion to dismiss the state claims is denied.

## I. BACKGROUND

### A. Facts

The following facts are taken from the amended complaint, dated May 16, 2008, and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

### 1. The Premises Violations

Plaintiff owns and resides in a single family home located at 1034 Washington Street, Baldwin, NY 11510 (the "Premises"). (Amended Complaint ("Am. Compl.") ¶ 2.) On or about July 31, 2005, plaintiff entered

_____

motion to amend on grounds of futility, it was subsequently agreed by all parties that plaintiff would be permitted to file the Amended Complaint, dated May 16, 2008, and defendants' opposition papers would be deemed to be motions to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim. This had no impact on the legal analysis in the various motion papers because the standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12(b)(6) motion to dismiss – namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted.

into a contract with Matco, as the general contractor, where Matco agreed to renovate the lower level of plaintiff's house (the "Contract"). (Id. ¶ 23.) The Contract provided, among other things, that Matco would provide structural, electrical and plumbing work for the lower level of the Premises, including remodeling an existing bathroom that had previously been gutted. (Id. ¶ 24.) Plaintiff agreed to pay Matco $37,000 under the Contract and to provide most of the building materials needed. (Id. ¶ 23.) Matco commenced performance of the renovation work, but, according to the amended complaint, failed to complete the work and perform the work properly in a number of respects, including the plumbing and electrical work.[2] (Id. ¶¶ 27-33.)

_____

[2] For example, the amended complaint alleges that

> the main waste vent stack was improperly cut and capped; the underground pipes to the waste vent and the fresh air pipe were not connected . . . the lead bend for the toilet was improperly installed making it impossible to install the toilet; the waste stack connection underground was either eliminated or buried in cement; and illegal PVC waste pipe was installed such that raw sewerage was now flushed from an upstairs toilet through the ceiling; the shower drain was improperly installed; the water meter and underground pipes were moved/relocated without authorization from the water authority; the water meter was not grounded; the shower body was improperly installed with parts missing and leaky valves;

At the signing of the Contract, Schwan, an alleged shareholder of Matco, had assured plaintiff that Matco could competently and timely renovate the Premises. (*Id.* ¶¶ 25, 26.) However, plaintiff's amended complaint alleges that the work under the Contract was beyond the scope of Matco's Home Improvement License issued by the Nassau County Department of Consumer Affairs, which plaintiff alleges was limited to "finishing work, carpentry, door moldings, closet systems." (*Id.* ¶ 25.) The amended complaint also alleges that Schwan and/or other employees of Matco, none of whom had an electrician's license, performed unlicensed electrical work in the Premises, which was not code compliant and put the Premises at great risk of an electrical fire. (*Id.* ¶ 29.) Moreover, the amended complaint alleges that the failure to properly perform the plumbing work was due to the fact that the work was performed by individuals who did not possess a plumber's license, a prerequisite to performing plumbing work within the Town. (*Id.* ¶ 31.) Specifically, plaintiff alleges that, although the Town issued plumbing permits to Jaramillo, a licensed master plumber who works for AMD, neither Jaramillo nor any AMD employee actually performed the work. Instead, the work was performed by unlicensed employees of Matco. (*Id.* ¶¶ 46, 64.)

Plaintiff alleges that Matco and Schwan then abandoned the job unfinished, well after the promised completion date, and also filed a mechanics lien against the home in December

---

hot and cold water pipes were installed in reverse; a trap and/or vent was not installed.

(Am. Compl. ¶ 31.)

2005. (*Id.* ¶ 27; *see also* Pl.'s Exh. D.) At that time, plaintiff had already paid twenty-six thousand dollars ($26,000) of the thirty-seven thousand dollars ($37,000) under the Contract. (*Id.* ¶ 28.) Plaintiff also had to hire an electrician to correct Matco's defective work at a great financial cost to plaintiff. (*Id.* ¶ 30.)

### 2. Request for an Inspection

According to the amended complaint, on December 21, 2005, plaintiff called Salute, a plumbing inspector for the TOH, to complain about the plumbing work and asked Salute to inspect the work. (*Id.* ¶ 70.) Plaintiff alleges that Salute refused her request and told her that he inspected and approved seven fixtures upstairs on her house and four fixtures downstairs on September 13 and 14, 2005. (*Id.* ¶ 70) Plaintiff alleges that she knew for certain that Salute's claim was false, alleging that Salute was not at the Premises on those dates. (*Id.* ¶ 71.)

### 3. The Harassment Campaign

Plaintiff alleges that defendants conducted a harassment campaign in order to coerce her into releasing Jaramillo, DiSabato, and AMD from liability for the defective plumbing (hereinafter, the "Harassment Campaign"). As part of the Harassment Campaign:

> (i) [Defendants] told prospective plumbers not to sign onto Crippen's job and told her that she would have to release Jaramillo from responsibility for the plumbing before they would permit a new plumber on the job;
> (ii) The TOH unreasonably delayed carrying forth its

mandatory nondiscretionary ministerial duty to inspect and document the dangerous electrical and plumbing conditions at Crippen's house[];

(iii) The TOH PEB Hearing of Ms. Crippen's Complaint against Jaramillo was tainted and her Complaint was dismissed based upon suspicious evidence; and

(iv) The TOH officials abused their discretionary powers to intimidate Ms. Crippen and those associated with her.

(Am. Compl. ¶ 75.)

## B. Procedural History

On July 31, 2007, plaintiff commenced this action in the Supreme Court of the State of New York, County of Nassau. Defendants removed the action to this Court on August 21, 2007.

A pre-motion conference was held on March 14, 2008 to set a briefing schedule for plaintiff's motion to amend. Plaintiff filed a motion to amend on May 17, 2008. The Town Defendants filed a memorandum in opposition on June 23, 2008, and the AMD Defendants filed their opposition on June 23, 2008. The Matco Defendants did not file any papers relating to this motion. Plaintiff filed a reply on July 20, 2008. Oral argument was held on July 25, 2008, at which time it was agreed that, as a procedural matter, plaintiff would be permitted to file the amended complaint, dated May 16, 2008, and defendants' opposition papers to the motion to amend would be deemed to be a motion to dismiss the amended complaint. Following the oral argument, the defendants formally moved to dismiss the amended complaint, which was opposed by plaintiff. With respect to that motion, all parties incorporated and relied upon their prior memoranda of law and other submissions. The Court has fully considered all of the submissions of the parties.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Further, in reviewing a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint," *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), as well as any documents appended thereto. However, the Second Circuit has also established two exceptions to

this rule. First, courts may consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference." *Id.* at 509. Second, courts "'take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings.'" *Crews v. County of Nassau*, No. 06-CV-2610 (JFB), 2007 U.S. Dist. LEXIS 6572, at *5 n.2 (E.D.N.Y. Jan. 30, 2007) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

Here, plaintiff did not append any documents to the complaint. Moreover, although both sides submitted factual affidavits in connection with their motions, the Court analyzes the motion to dismiss based upon the allegations in the amended complaint. Thus, the Court has not considered factual information in these affidavits that is not contained in the amended complaint.

## III. Discussion

### A. Section 1983 Equal Protection Claim

Plaintiff's sole federal claim in the amended complaint is a Section 1983 claim against the Town Defendants (that is, the TOH and Salute) for violating her constitutional rights under the Equal Protection Clause, as part of a conspiracy with the other defendants. Plaintiff generally alleges that defendants treated her "differently than other TOH property owners who complain to the TOH of defective and dangerous work." (Am. Compl. ¶ 92.) Here, plaintiff does not allege invidious discrimination, but instead, concedes that she is proceeding under a "class of one" theory of equal protection. The Town Defendants have moved to dismiss the amended complaint on

the grounds that it fails to state a Section 1983 claim as a matter of law. In particular, the Town Defendants assert that plaintiff is improperly attempting to transfer a garden-variety contract dispute between a homeowner and a contractor into a constitutional violation. As set forth below, taking all the allegations of the amended complaint as true and construing them most favorably to plaintiff, the Court concludes that the "class of one" claim survives a motion to dismiss.

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." *Latrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). An individual not alleging invidious discrimination on the basis of membership in some group, may nevertheless prevail on an equal protection claim under the "class of one" theory recognized by the Supreme Court in *Willowbrook v. Olech*, 528 U.S. 562 (2000). Under a "class of one" equal protection claim, a plaintiff must show that (1) "[he] has been intentionally treated differently from others similarly situated and" (2) "there is no rational basis for the difference in treatment." *Willowbrook*, 528 U.S. at 564; *see also Giordano v. City of New York*, 274 F.3d 740, 743 (2d Cir. 2001). In addition to the two elements set forth above, the Supreme Court recently set forth another requirement for plaintiffs bringing "class of one" claims. Specifically, in *Engquist v. Oregon Department of Agriculture*, 128 S.Ct. 2146 (2008), involving the public employment context, the Supreme Court held that such plaintiffs must show that the differential treatment received resulted from non-discretionary state action. The Court will

analyze *Engquist* and then apply the "class of one" requirements in light of *Engquist* to the facts at issue here.

### 1. The *Engquist* Decision

In *Engquist v. Oregon Department of Agriculture*, 128 S.Ct. 2146 (2008), the Supreme Court addressed "class of one" claims and declined to apply this doctrine in the context of public employment. The *Engquist* court reasoned that "[if] plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim." *Id.* at 2156; *accord Conyers v. Rossides*, Docket No. 07-4095-cv, 2009 WL 513734, at *11 (2d Cir. Mar. 3, 2009). Although the *Engquist* decision was applied in the public employment context, the Court finds the following analysis by the Supreme Court to be instructive to the instant matter:

> Recognition of the class-of-one theory of equal protection on the facts in *Olech* was not so much a departure from the principle that the Equal Protection Clause is concerned with arbitrary government classification, as it was an application of that principle. That case involved the government's regulation of property. Similarly, the cases upon which the Court in *Olech* relied concerned property assessment and taxation

> schemes. *We expect such legislative or regulatory classifications to apply "without respect to person,"* to borrow a phrase from the judicial oath. As we explained long ago, the Fourteenth Amendment "requires that all persons subjected to . . . legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed."

> \*\*\*

> What seems to have been significant in *Olech* and the cases on which it relied was *the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed.* There was no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations – at least not with regard to easement length, however typical such determinations may be as a general zoning matter. Rather, the complaint alleged that the board consistently required only a 15-foot easement, but subjected *Olech* to a 33-foot easement. This differential treatment raised a concern of arbitrary classification, and we therefore required that the

State provide a rational basis
for it.

*Engquist*, 128 S.Ct. at 2153-54 (emphasis added) (internal citations omitted). The Court refers to two cases – *Allegheny Pittsburgh Coal Co. v. Commission of Webster County*, 488 U.S. 336 (1989) and *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923) – that represent the "clear standard" present in *Olech*, stating:

> In *Allegheny Pittsburgh*, cited by the *Olech* Court, the applicable standard was market value, but the county departed from that standard in basing some assessments on quite dated purchase prices. Again, there was no suggestion that the "dramatic differences in valuation" for similar property parcels, were based on subjective considerations of the sort on which appraisers often rely. *Sioux City Bridge*, also cited in *Olech*, was the same sort of case, recognizing an equal protection claim when one taxpayer's property was assessed at 100 percent of its value, while all other property was assessed at 55 percent, without regard to articulated differences in the properties.

*Id.* at 2154.

The *Engquist* Court then contrasted the above listed line of cases with those that entail "discretionary" decisions, where the Equal Protection Clause does not apply:

There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

Suppose, for example that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does

not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself – the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

*Id.* at 2154. Moreover, while the Supreme Court noted that "[t]his principle applies most clearly in the employment context," the language of the opinion does not limit its findings to purely employment cases, as evidenced by the traffic officer example discussed above.

Thus, several courts have applied *Enquist* to bar class-of-one claims in connection with discretionary decisions that are outside the government-employee context. *See, e.g., Flowers v. City of Minneapolis, Minnesota,* No. 07-2705, 2009 WL 635243, at *4 (8th Cir. Mar. 13, 2009) ("In light of *Engquist,* therefore, we conclude that while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim."); *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269 (11th Cir. 2008) ("We have little trouble applying the reasoning in *Engquist,* directed at a [sic] the government-employee relationship, to the circumstances in this case involving a government-contractor relationship. . . . Just as in the employee context, and in the absence of a restricting contract or statute, decisions involving government contractors require broad discretion that may rest 'on a wide array of factors that are difficult to articulate and quantify.'") (quoting *Engquist,* 128 S. Ct. at 2154); *United States v. Moore,* 543 F.3d 891, 901 (7th Cir. 2008) (applying *Engquist* to challenges to decisions of prosecutorial discretion and noting "a class-of-one equal protection challenge, at least where premised solely on arbitrariness/irrationality, is just as much a 'poor fit' in the prosecutorial discretion context as in the public employment context"); *Adams v. Meloy,* No. 07-3453, 2008 WL 2812603, at *2 (7th Cir. July 22, 2008) (citing *Engquist* and determining that "class of one" claim against parole board had no merit because, *inter alia,* "[t]he parole board's inherent discretion necessitates that some prisoners will receive more favorable treatment than others."); *Bissessur v. Indiana Univ. Bd. of Trustees,* No. 1:07 civ 1290 (SEB) (WTL), 2008 WL 4274451, at *9 (S.D. Ind. Sept. 10, 2008) (applying *Engquist* to class-of-one claim challenging the school's decision to expel plaintiff and noting "[t]he Supreme Court's rationale in *Engquist* effectively forecloses his claim"); *Siao-Pao v. Connolly,* 564 F. Supp. 2d 232, 245 (S.D.N.Y.

2008) (rejecting a "class of one" argument and finding that a parole board's decision to deny parole was based on the subjective and individualized nature of the decision); *accord Vassallo v. Lando*, 591 F. Supp. 2d 172, 186 (E.D.N.Y. 2008); *Analytical Diagnostic Labs., Inc. v. Kusel*, No. 07 Civ. 3908 (BMC) (RER), 2008 WL 4222042, at *4 (E.D.N.Y. Sept. 15, 2008); *but see Franks v. Rubitschun*, No. 07-1181, 2009 WL 440364, at *2 n.3 (6th Cir. Feb. 23, 2009) (noting that *Engquist*'s holding was specifically limited to the public-employment context and concluding that "reliance on the 'crucial difference' between government acting as sovereign and government acting as employer, suggests that *Engquist*'s discussion of discretionary decisionmaking should not control the case at hand" which challenges a parole board decision) (citation omitted).

2. The Alleged Non-Discretionary Decisions

In the wake of *Engquist*, plaintiff's amended complaint seeks to focus on certain non-discretionary duties that are the basis for the class-of-one equal protection claim. Moreover, plaintiff's counsel made clear in her Reply Memorandum (and confirmed at oral argument) that her equal protection claim is "based upon the defendants' violations of nondiscretionary duties or deviations from clear standards established by the TOH Code, State Law or custom and procedures."[3] (*See*

---

[3] Thus, plaintiff is no longer asserting that an equal protection claim would lie to challenge the inherently discretionary decision of TOH employees in terms of the results of the inspection or the Plumbing Board in terms of the results of the hearing. In any event, to the extent plaintiff were attempting to make such allegations the basis for a class-of-one claim, it would fail as a matter of law under the reasoning of *Engquist*. The fact

that plaintiff disagrees with the results of an inspection or hearing in connection with her plumbing work is not cognizable as a "class of one" claim because such decisions, like the enforcement of traffic violations discussed in *Engquist*, are inherently discretionary based upon individualized determinations. *See, e.g., Analytical Diagnostic Labs. Inc. v. Kusel*, No. 07 Civ. 3908 (MBC) (RER), 2008 WL 4222042, at *5 (E.D.N.Y. Sept. 15, 2008) ("Regardless of the other serious factual issues raised by plaintiff as to different treatment and defendants' motivations, the undisputed fact remains that DOH officials possess discretion to subjectively evaluate laboratories and make licensing decisions, and any differential treatment of ADL stemmed from these discretionary activities. As the *Engquist* Court noted, a plaintiff cannot raise a federal constitutional challenge to a necessarily subjective and individualized decision made by state officials. Plaintiff has failed to allege a federal equal protection violation based on defendants' exercise of discretion as DOH employees."). Indeed, in the instant case, plaintiff alleges no guidelines or standards that govern the decisions by inspectors conducting inspections or the Plumbing Board's determinations. Under such circumstances, in light of *Engquist*, these inherently discretionary decisions cannot form the basis for a "class of one" claim. Similarly, to the extent that plaintiff is attempting to base the "class of one" claim on alleged self-dealing (such as DiSabato's alleged failure to recuse himself in the matter before the Plumbing Board), such a claim must fail as a matter of law not only because the alleged recusal issue is discretionary, but also because the amended complaint alleges that "TOH employees have a history of violating [the conflicts-of-interest provision] in the course of exercising their duties in the inspection process of TOH Properties with the resulting violation of property owner's constitutional rights." (Am. Compl. ¶ 93.) Given that allegation of a pattern with respect to conflicts of interest, no "class of one" claim could arise for any such alleged violation. However, as discussed *supra*, certain

Plaintiff's Reply Memorandum, at 2.)
Specifically, as enumerated at oral argument, plaintiff focuses on two non-discretionary duties allegedly violated by the Town Defendants: (1) the non-discretionary duty to conduct an inspection of a dangerous condition upon request by a resident under Sections 90-4 and 86-5 of the Town Code, which by custom and policy should occur within 48 hours of such request (Am. Compl. ¶¶ 75(ii), 92); and (2) the non-discretionary duty to allow a homeowner, such as plaintiff, to substitute a new contractor on the plumbing permit, without adding the requirement that the homeowner release the prior contractor from liability for any defective plumbing performed (Am. Compl. ¶¶ 75(i), 92).

As set forth below, the Court finds that these two theories of liability, if proven, provide a plausible post-*Engquist* basis for a "class of one" equal protection claim because they relate to alleged non-discretionary duties of TOH officials.[4] The Court will analyze each theory of liability in turn.[5]

### (a) Duty to Conduct Inspection

In the amended complaint, plaintiff alleges that "the TOH unreasonably delayed carrying forth its mandatory nondiscretionary ministerial duty to inspect and document the dangerous electrical and plumbing conditions at Crippen's house." (Am. Compl. ¶ 75(ii).)

TOH's duties in connection with a request for an inspection of a dangerous condition are set forth in Town Code §§ 90-4 and 86-5.[6] Town Code § 90-4 provides that:

> A. Upon receipt of information that a building or structure may be dangerous, the Commissioner of Buildings shall cause an investigation of

---

[4] allegedly non-discretionary aspects to the inspection process (*i.e.,* the timing of the inspection) and the permit process (*i.e.*, improperly requiring release of liability to substitute a new contractor) can form the basis of a "class of one" claim.

[4] The Court notes that there are numerous additional details regarding this claim that are contained in the Crippen Affidavit. However, those additional details (outside the amended complaint) are not properly considered by the Court. Nevertheless, the Court concludes that the allegations in the amended complaint are still sufficient, with respect to the two alleged non-discretionary duties discussed below, to satisfy the motion to dismiss standard.

[5] In her reply papers and at oral argument, plaintiff appears to be suggesting two other non-discretionary duties as a basis for the equal

protection claim: (1) her denial of participation in a hearing before the Plumbing Board because she was not permitted to attend the hearing to present evidence; and (2) her denial of an opportunity, after receiving a Notice of Violation (regarding a tire and rusty rim on her property), to cure the code violation before receiving a Desk Appearance Ticket. It appears, from the reply papers and Ms. Crippen's Affidavit, that she is claiming that both the denial of an opportunity to appear at the hearing and the issuance of a Desk Appearance Ticket without an opportunity to cure, were inconsistent with well-settled Town policies applied to other similarly situated individuals. However, none of these allegations are contained in the amended complaint about either of these theories of liability. Therefore, if plaintiff is seeking to add these theories of liability, the Court will grant her an opportunity to amend the complaint to add these allegations and properly articulate these claims.

[6] Although the amended complaint refers to § 86-3, it appears that plaintiff intended to reference § 86-5, regarding duties of the inspectors, and the Court will construe the amended complaint as such.

the premises to be made and an inspection report submitted and filed in his office.

Town Code § 86-5 provides that:

E. [The Building Inspector] shall, on complaint or other information, examine existing and completed buildings and structures, as well as buildings and structures under construction, and shall issue all appropriate notices or orders to remove illegal or unsafe conditions, to require the necessary safeguards during the construction and to insure compliance during the entire course of construction with the requirements of such laws, ordinances and regulations. He shall make all inspections which are necessary or proper for the carrying out of his duties, except that he may accept written reports of inspection from other employees of the Department of Buildings or from generally recognized and authoritative service and inspection bureaus, provided the same are certified by a responsible official thereof.

With respect to these provisions, although no specific time period is set forth during which the inspection must be performed, plaintiff asserts that "[i]t is the custom and procedure of the TOH to investigate such complaints within 24-48 hours." (Pl.'s Reply, at 15; *see also* Am. Compl. ¶ 92 ("[A]s per TOH § 86-3 and 90-4, that property owner is entitled to an *immediate* inspection and

documentation of the dangerous conditions by the TOH, with appropriate notices.").) Plaintiff further alleges in the amended complaint that, contrary to this well-established policy, the TOH intentionally ignored her request for an inspection in December 2005 for several months before finally performing the inspection months later. (Am. Compl. ¶¶ 34, 70; *see also* Pl.'s Reply, at 16 ("When Crippen complained to the TOH about the dangerous conditions at her property and requested an inspection, the TOH totally ignored such nondiscretionary duties. It took about two (2) months to inspect the dangerous plumbing defects and three (3) for the electrical and then it still did not properly carry forth its duties.").) Based upon the allegations in the amended complaint, the Court concludes that plaintiff has alleged a plausible "class of one" claim.

The Court finds defendants' arguments as to why this theory of liability cannot survive a motion to dismiss to be unpersuasive. First, defendants dispute whether the above-listed Town Code provisions apply to Crippen's situation at all. In particular, defendants argue that these provisions are designed to address dangerous conditions such as collapsing buildings and, when such an inspection finds such a condition, the Town directs the property owner to correct the condition or the Town will intervene. However, these provisions, on the face of their language, do not exclude homeowners such as Crippen, allegedly reporting a dangerous condition, from their application. Thus, the Court cannot rule as a matter of law that these provisions have no application to Crippen.

Second, defendants argue that there is no language in the provisions mandating that such inspections be done in a specified period and, thus, the timing is entirely discretionary. However, plaintiff alleges that there is a clear

policy and practice that such inspections are done immediately – i.e., within 24-48 hours – once the request for an inspection is made and, if such a clear policy were proven, it can provide a basis for a "class of one" claim even if it is not within the code's language. In fact, in *Olech*, the "class of one" equal protection claim was not that the village had departed from a particular code provision regarding the scope of an easement; rather, plaintiff asserted that "'substantial ill will'" generated by a prior lawsuit "caused the Village to "depart from its *normal policy* of demanding only a 15-foot easement in exchange for providing municipal water and instead to decide to pave over a chunk of the Olechs' property." *Olech v. Village of Willowbrook*, 160 F.3d 386, 387 (7th Cir. 1998). The Supreme Court, affirming the Seventh Circuit, found that the homeowner could assert a "class of one" equal protection claim based upon the allegation that the village's demand for a 33-foot easement in plaintiff's situation was a departure from the well-established policy of requiring only a 15-foot easement. 528 U.S. at 565. Similarly, in the instant case, plaintiff can attempt to prove that the TOH departed from its policy of conducting inspections within 48 hours of a request and waited over two months to conduct an inspection because of some ill-will toward plaintiff.

### (b) Duty to Allow Substitution of Contractor on Permit

Plaintiff also alleges that TOH officials violated the non-discretionary duty to allow a homeowner, such as plaintiff, to substitute a new contractor on the plumbing permit, without adding the requirement that the homeowner release the prior contractor from liability for any defective plumbing performed. (Am. Compl. ¶¶ 75(i), 92). As plaintiff explained in the reply memorandum:

> For many months, TOH officials and decision makers interfered with Crippen's attempts to replace Jaramillo on the plumbing permit with a new plumber and thus Crippen was prevented from correcting the defective plumbing work. The custom and procedure of the TOH is to permit such substitution, as long as the property owner provides the name of the new contractor and his insurance certification. The TOH informed Crippen that this was the procedure in order to replace Matco on the permit. However, in the case of the plumbing permit, Salute and TOH Plumber Inspection Supervisor James Dalto deviated from this established custom and practice by adding the extra requirement that Crippen first had to relieve Jaramillo from liability for Matco's defective plumbing.

(Pl.'s Reply, at 5-6.) At oral argument, the Town Defendants conceded that, if Crippen was precluded from replacing Matco on the permit until she released Jaramillo from liability, that would be inconsistent with the Code provisions and Town policy. However, it was argued, among other things, that no such requirement was imposed in the instant case, and the claim is based upon confusion by Crippen regarding the process. However, any such disputed issues cannot be decided on a motion to dismiss in which plaintiff's allegations must be assumed to be true. In short, the Court concludes that the amended complaint adequately alleges that the Town Defendants violated a non-discretionary duty to allow plaintiff to replace Jaramillo on the

plumbing permit without requiring plaintiff to release Jaramillo from liability.

### (3) Similarly Situated Individuals

The Town Defendants also contend that, with respect to these alleged violations of non-discretionary duties, plaintiff has failed to adequately allege the existence of similarly situated individuals. (Town Defendants' Memorandum of Law, at 11.) As set forth below, the Court disagrees.

In the amended complaint, plaintiff alleges that she was treated differently than other TOH property owners who complain to the TOH of defective and dangerous work. (Am. Compl. ¶ 92.) The amended complaint states that "[t]ypically, a TOH Property owner who makes a complaint to the TOH about dangerous and non-code compliant conditions in his/her home created by a contractor is permitted to replace that offending contractor on the permit with another contractor simply by providing notice and insurance information." (*Id.*) Plaintiff alleges that she was treated differently than these other similarly situated TOH residents because, "[i]n response to her complaints about dangerous conditions at her property, the Defendants coordinated the Harassment Campaign against her." (*Id.*)

Here, plaintiff has sufficiently alleged that the Town Defendants treated her differently from other similarly situated homeowners. Although some courts have dismissed similar equal protection claims where, as here, the plaintiff fails to specifically identify those "similarly situated," *see Ferrara v. Superintendent*, 26 F. Supp. 2d 410, 415 (N.D.N.Y. 1998) (dismissing plaintiff's equal protection claim arising from the denial of FOIL requests where the plaintiff "[did] not identify any such similarly-situated person or

specify the instance in which that person made a request similar to plaintiff's"), this Court declines to so find based on the Supreme Court's direction that a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" to defeat a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 512 (2002) (internal quotation marks and citation omitted); *see also Malone v. City of New York*, No. 05 Civ. 2882 (DGT), 2006 WL 2524197, at *4 (E.D.N.Y. Aug. 30, 2006) ("[D]istrict courts have applied *Swierkiewicz* to Section 1983 claims.") (citing *Dean v. N.Y.C. Transit Auth.*, 297 F. Supp. 2d 549, 554 (E.D.N.Y. 2004) and *Tamayo v. City of New York*, No. 02 Civ. 8030 (HB), 2004 WL 137198, at *5 (S.D.N.Y. Jan. 27, 2004)). In fact, as the Second Circuit has observed, at the motion to dismiss stage, there is no "requirement that a plaintiff identify in [his] complaint actual instances where others have been treated differently for the purposes of equal protection," nor that a plaintiff must "'name names' in [his] complaint" with regard to those similarly situated. *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003). Instead, where, as here, plaintiff makes a "general allegation that similarly situated" persons have been treated differently, such an allegation is "sufficient, albeit barely, to meet the minimal level established by *Olech* for 'class of one' equal protection claims at the pleading stage." *Id.* at 707.

In sum, plaintiff has alleged the following in the amended complaint: (1) certain non-discretionary duties that were violated by the Town Defendants in connection with the alleged failure to timely inspect her home and the alleged failure to allow her to substitute a new contractor on the permit for work on her home without relieving the prior contractor of liability; (2) she was singled out for this treatment unlike all other similarly situated

homeowners in the Town of Hempstead; and (3) the difference in treatment had no rational basis and, instead, was simply done as part of a campaign of harassment against her. These allegations are sufficient to state a plausible "class of one" claim that survives a motion to dismiss.

### (4) The AMD Defendants

The AMD Defendants also move to dismiss the Section 1983 claims against them. To the extent that they raise the same pleading arguments as the Town Defendants, including the discretionary nature of the challenged decisions, those arguments are rejected for the reasons discussed *supra*, with respect to the Town defendants. However, the Court will address below the additional contention made by the AMD Defendants – namely, that no Section 1983 claim can exist against them because (1) DiSabato had no position with the TOH Building Department, and (2) neither AMD nor Jaramillo had any position with the TOH. As discussed below, the Court finds those contentions to be without merit.

With respect to defendant Jaramillo, the amended complaint clearly alleges that he was a "state actor" based upon his membership on the TOH Plumbing Examination Board. (*See* Am. Compl. ¶ 5 (DiSabato "at all relevant times hereinafter mentioned was a member of the TOH Plumbing Examination Board. Upon information and belief, DiSabato at all relevant times hereinafter mentioned was employed by the TOH.").) The fact the amended complaint also alleges that DiSabato, while a member of the Plumbing Board, was the CEO of defendant AMD, does not eliminate his potential liability as a "state actor" under Section 1983. Thus, because the amended complaint adequately alleges that DiSabato was a "state actor" under Section

1983, there is no basis for dismissal on that ground.

Similarly, with respect to defendant AMD and Jaramillo, dismissal of the Section 1983 claim is unwarranted at the motion to dismiss stage. Although these individuals are clearly not state actors, a private actor can be considered as acting under the color of state law for purposes of Section 1983 if the private actor was "'a willful participant in joint activity with the State or its agents.'" *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)) (citation omitted). This potential liability also applies to a private party who "conspires with a state official to violate the plaintiff's constitutional rights . . . ." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005). "In order to survive a motion to dismiss on a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Carmody v. City of New York*, No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at *16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-35 (2d Cir. 2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello*, 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Robbins v. Cloutier*, 121 Fed. Appx. 423, 425 (2d Cir. 2005) (dismissing a § 1983 conspiracy claim as insufficient where plaintiff merely alleged that defendants "acted in a concerted effort" to agree not to hire plaintiff and to inform others not to hire plaintiff). "A plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must

present facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (report and recommendation) (accepted by, in part, rejected by, in part, *Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005)) (citations and quotations omitted).

In the instant case, the Court concludes that plaintiff's allegations of conspiracy as to the AMD defendants are sufficient to survive a motion to dismiss. As discussed *supra*, in the amended complaint, plaintiff alleges that (1) Matco and Schwan conspired with AMD, Plumbing Examining Board Member DiSabato (who also was the CEO of AMD), and DiSabato's partner (defendant Jaramillo) to fraudulently and unlawfully allow Schwan to do plumbing work at Crippen's home under the Jaramillo license (referred to in the amended complaint as the "Permit Scam") (Am. Compl. ¶ 64), and (2) TOH inspector Salute (and the TOH Plumbing Board) joined and facilitated this conspiracy by, among other things, (i) refusing to inspect the defective plumbing at the Crippen home caused by Matco and Schwan in a timely manner, and (ii) attempting to cover-up the conspiracy once the inspection was performed by seeking to "coerce her into releasing Jaramillo, DiSabato, and AMD from liability for the defective plumbing through a campaign of harassment." (Am. Compl. ¶¶ 70, 74, 75.) Thus, the amended complaint alleges in some detail how AMD conspired with state actors – including Salute and the Plumbing Board (through DiSabato) – to provide differential treatment to Crippen in connection with certain non-discretionary decisions discussed *supra*. Given these detailed allegations in the amended complaint, there is no basis to dismiss the Section 1983 conspiracy claim as conclusory. *See, e.g., O'Connor v. City of St. Paul,* No. Civ. 01-846MJDSRN, 2001 WL 1677605, at *5 (D. Minn. Dec. 21, 2001) ("In

the Amended Complaint, Plaintiffs do allege that [the Secretary of Local 21] took actions to deprive Plaintiffs the right to keep their promotional benefits as Secretary of Local 21, and that the union worked in concert with the City of St. Paul to ensure the guarantee of the promotional rights was distinguished. Accordingly, for purposes of [the Secretary of Local 21's] motion to dismiss, the Court finds that Plaintiffs have stated a claim against [the Secretary of Local 21] under Section[s] 1983 and 1985.").

Accordingly, the AMD Defendants' motion to dismiss the Section 1983 claim is denied.[7]

## B. *Monell* Liability

In the alternative, the TOH argues that, even if plaintiff has sufficiently pled an equal protection claim, she has failed to plead sufficient allegations to impose liability on the TOH. (Town Defendants' Memorandum of Law, at 17-19.) As set forth below, the Court disagrees.

Under *Monell*, a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In order to support liability under *Monell*, a plaintiff must "show that the challenged acts were performed

---

[7] To the extent that the AMD Defendants also argue that the authority of the TOH Plumbers Examining Board is extremely limited with respect to complaints by residents (and that the Board simply tries informally to assist in resolving such issues), the Court concludes that any disputes regarding the policies and practices of the Plumbing Board and its operation with respect to Crippen's complaints cannot be decided at the motion to dismiss stage of the proceeding.

pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989), and *Monell*, 436 U.S. at 692-94). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44); *see generally Wray v. City of New York*, 490 F.3d 189, 195-96 (2d Cir. 2007) (discussing failure to train claims); *Krug v. County of Rennselear*, 559 F. Supp. 2d 223, 241 (N.D.N.Y. 2008) (same). The parties do not dispute that the Town of Hempstead is considered a municipal entity for purposes of the instant lawsuit.

Plaintiff's amended complaint alleges that the TOH is liable for the conduct of its employees DiSabato and Salute in orchestrating the "Harassment Campaign," because it did not train or supervise TOH employees. (*See* Am. Compl. ¶¶ 93-95.) The amended complaint proceeds to describe the policies and practices that led to this alleged failure to train its employees, which could have prevented the alleged constitutional violations. *See id.* The amended complaint further alleges that the TOH's "actions, practices, customs, and usages" in this regard were "intentional, willful, wanton, reckless, and malicious." (*See id.* at ¶ 96.) Based upon a careful review of the amended complaint, the Court finds that such allegations are sufficient to plead a plausible *Monell* claim. At this early stage in the litigation, plaintiff need not prove that she would succeed on her claim of *Monell* liability, but must merely show that she has a plausible claim that would entitle her to relief. Accordingly, the TOH's motion to dismiss the *Monell* claim is denied.

## C. Discovery

At oral argument, defendants suggested that the plaintiff's Section 1983 claims would lead to massive discovery of all TOH plumbing inspections in order to determine whether a viable "class of one" claim exists. The Court disagrees. For example, if plaintiff is incorrect in her assertion that the TOH's policy is to perform inspections within 48 hours of a homeowner's request, the defendants should be able to demonstrate evidence of other inspections that did not occur within 48 hours of request without needing to produce massive amounts of discovery. Similarly, if plaintiff was never required to relieve Jaramillo of liability before being allowed to substitute a new contractor on the permit, as defendants contended at oral argument, then reference to files of other homeowners of TOH regarding that issue would be completely unnecessary. In short, the Section 1983 claims, as narrowed by plaintiff's counsel in plaintiff's reply papers and at oral argument (and as further narrowed by this Court, for the reasons discussed *supra*) do not provide an invitation to plaintiff to engage in a "fishing expedition" of the files of the TOH regarding every plumbing inspection in the TOH going back years. Instead, the Court directs that much more targeted discovery be utilized to determine (1) whether the particular non-discretionary policies asserted by plaintiff exists, (2) if so, whether these particular non-discretionary policies were violated in connection with plaintiff's situation, and (3) if so, whether plaintiff was singled out for this differential treatment unlike similarly situated homeowners. The Court leaves it to the discretion of Magistrate

Judge Lindsay, in consultation with the parties, to determine the precise scope of discovery that will be necessary to adequately address those issues.

### D. Pendent State Claims

Plaintiff also asserts the following pendent state claims: (1) breach of contract against Matco and Schwan; (2) fraud against Matco and Schwan; (3) negligence against Matco, Schwan, Jaramillo, and DiSabato; (4) fraud against TOH, Schwan, Matco, AMD, Jaramillo, DiSabato and Salute; (5) a claim under Section 349(a) of the General Business Law for deceptive acts or practices against Salute, Jaramillo, DiSabato, AMD, Matco, and Schwan; and (6) breach of fiduciary duty against TOH, DiSabato, and Salute.

The Town Defendants argue that: (1) the Section 349(a) claim against Salute must be dismissed because Salute failed to conduct "any business, trade, or commerce" with Crippen, as required under Secton 349(a); (2) the other claims against the Town Defendants must be dismissed for failure to timely file a Notice of Claim. As set forth below, the Court agrees and dismisses the state law claims against the Town Defendants.[8]

### A. New York General Business Law § 349

New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" within New York State. N.Y. Gen. Bus. Law § 349(a). The statute provides that any individual who has been injured under Section 349 may bring a private action in order to enjoin the alleged unlawful practice, as well as to recover actual damages or fifty dollars, whichever amount is greater. N.Y. Gen. Bus. Law § 349(h).

As the Second Circuit has recently reiterated, "[a] § 349 claim has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *Cohen v. J.P. Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). Likewise, the New York Court of Appeals has held that "section 349 is directed at wrongs against the consuming public. . . . Thus, as a threshold matter, plaintiffs claiming the benefit of section 349 – whether individuals or [other entities] – must charge conduct of the defendant that is consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995); *see also Vitolo v. Mentor H/S, Inc.*, No. 06-CV-1794, 213 Fed. Appx. 16, 17 (2d Cir. Jan. 3, 2007) (summary order) (citing *Stutman v. Chemical Bank*, 731 N.E.2d 608, 611 (N.Y. 2000)), *petition for cert. filed*, 75 U.S.L.W. 3623 (U.S. May 11, 2007) (No. 06-1506). Once a plaintiff has established that an act is consumer-oriented, the plaintiff must show

---

[8] To the extent that the AMD Defendants contend that plaintiff should not be permitted to assert certain state law claims because she amended them without permission of the Court, the Court finds that argument to be without merit. The Court concludes that all amendments to the state claims made by plaintiff to the amended complaint were permissible, especially at this early stage of the litigation, under the liberal standard for amendment of pleadings under Rule 15 of the Federal Rules of Civil Procedure. *See Davenport v. County of Suffolk*, No 99-CV-3088 (JFB), 2007 U.S. Dist. LEXIS 12696, at *21-*22 (E.D.N.Y. Feb. 23, 2007) (setting forth the

standard for amending the complaint).

that "defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744 (citations omitted).

In the instant case, Salute is not alleged to have engaged in any business, trade, or commerce, or to have provided a service, to plaintiff. In fact, it is abundantly clear from the amended complaint that any Section 349 claim against Salute is based solely on his actions as a plumbing inspector employed by the TOH. (*See* Am. Compl. ¶ 4 (Salute "at all relevant times hereinafter mentioned was a plumbing inspector employed by the TOH").) His alleged actions as a municipal plumbing inspector, who performs plumbing inspections, do not fall within the scope of Section 349(a). Accordingly, the Section 349 claim against Salute is dismissed.

## B. Other Claims Against the Town Defendants

State claims brought under state law in federal court are subject to state procedural rules. *See, e.g., Felder v. Casey*, 487 U.S. 131, 141 (1988). As such, New York County Law § 52 ("Section 52") applies in this case and provides that

> [a]ny claim or notice of claim against a county . . . for damages arising at law or in equity . . . alleged to have been caused in whole or in part by or because of any misfeasance, omission of duty, negligence, or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e

of the general municipal law. . . . Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.

Section 52 incorporates the notice of claim requirements contained in New York General Municipal Law §§ 50-e and 50-i ("Section 50-e" and "Section 50-i").[9] Section 50-e requires that a notice of claim be filed within ninety days of the incident giving rise to the claim. Moreover, pursuant to Section 50-i, a plaintiff must plead in the complaint that: (1) the notice of claim was served; (2) at least thirty days has elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim. *See Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006). The plaintiffs bear the burden of demonstrating compliance with the notice of claim requirement. *Id.*; *see Rattner v. Planning Comm'n of Vill. of Pleasantville*, 548 N.Y.S.2d 943 (N.Y. App. Div. 1989).

---

[9] While Section 50-e and 50-i specifically apply to tort claims under New York law, Section 52 applies their service requirements to "[a]ny claim or notice of claim against a county for . . . invasion of personal or property rights, of every name and nature." *See Feldman v. Nassau County*, 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004) (finding that Section 52, "the statute applicable to plaintiff's claims against Nassau County . . . is broader than" Section 50-e, and that the "notice of claim provision of [Section] 52 covers plaintiff's [employment discrimination] claims against Nassau County"); *Gallo v. Suffolk County Police Dep't*, 360 F. Supp. 2d 502, 511-512 (E.D.N.Y. 2005); *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (finding that Section 52 incorporates the notice of claim requirements contained in Section 50-i).

In this case, it is undisputed that plaintiff failed to file a timely notice of claim. Plaintiff's fraud claim arose on December 21, 2005, when she called Salute to complain about the defective plumbing, and he allegedly refused to inspect the Premises. (*See* Am. Compl. ¶ 70.) Even if the latest date possible is used as the accrual date – namely, the date of the last inspection on February 27, 2006 (which plaintiff alleges was flawed and fraudulent) – the filing of the notice of claim on June 14, 2006 is untimely, because it was filed more than 90 days after the happening upon which the claim is based.

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (internal quotations and citations omitted); *see Horvath*, 423 F. Supp. 2d at 423 ("Absent a showing of such a Notice of Claim, the complaint may be dismissed for failure to state a cause of action.") (internal quotation omitted). Accordingly, for the state law claims asserted in this case, the failure to timely file a notice of claim in the instant action "is fatal unless the action has been brought in the public interest, such as a class action brought to protect civil rights, or a court has granted leave to serve late notice." *Pustilnik v. Hynes*, No. 99 Civ. 4087 (JG), 2000 WL 914629, at *6 (E.D.N.Y. June 27, 2000) (citing *Mills*, 59 N.Y.2d 307).

The Court finds that the instant action, a private civil rights lawsuit, has not been brought in the public interest. *See, e.g., Feldman*, 349 F. Supp. 2d at 539 (finding employment discrimination claim that "seeks the enforcement of [plaintiff's] private interests" is not in public interest); *Atkins v. County of Orange*, 251 F. Supp. 2d 1225,

1235 (S.D.N.Y. 2003) ("[T]he public interest exception [to the notice of claim requirement] does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries."); *Turner v. County of Suffolk*, 955 F. Supp. 175, 177 (E.D.N.Y. 1997) (finding that, while plaintiffs' recovery might have an effect on others' interests, "we do not think such an effect would be of any greater value to the public than any other award to civil rights plaintiffs"). Moreover, as discussed below, this Court cannot grant plaintiff's leave to serve late notice.

As such, plaintiff's failure to file a notice of claim requires dismissal of the state law claims against the TOH, as well as the individual municipal defendant, Carmine Salute. By its plain language, Section 52 applies to any action brought against the Town. In addition, in this case, although the amended complaint attempts to sue Salute individually, "[t]here [i]s nothing in the . . . complaint that could be construed as an allegation against defendant in her individual capacity," *Kalpin v. Cunningham*, 401 N.Y.S.2d 659 (N.Y. App. Div. 1978), because, as noted *supra*, plaintiff's claims against defendant Salute relate solely to his status as a TOH employee, while he was acting within the scope of his employment. Thus, Salute is entitled to the application of the Notice of Claim requirements and, thus, the state claims against him are untimely. *See, e.g., Guoba v. Sportsman Props.*, No. 03-CV-5039 (JS)(WDW), 2006 WL 2792753, at *8 n.4 (E.D.N.Y. Sept. 26, 2006) ("Plaintiffs have not challenged the assertion by Defendants Mello and Madigan that they were acting within the scope of their employment when the CO was issued, and thus are entitled to the benefit of the short limitations period."); *see also Keating v. Gaffney*, 182 F. Supp. 2d 278, 290 (E.D.N.Y. 2001)

(dismissing state law employment discrimination claims under NYHRL 296 where the county executive and other county employees were found to be "[c]ounty officials [or] employees . . . and, therefore, claims against them are subject to the notice of claim provision [in Section 52] as well"); *Pustilnik*, 2000 WL 914629, at *7 (dismissing state law employment discrimination claim because the county's district attorney and another county employee were found to be "[c]ounty officials subject to the notice of claim provision under [Section 52]"); *Atkins*, 251 F. Supp. 2d 1225 (dismissing New York Correction Law claims against county executive and other county officials based on plaintiffs' failure to serve timely notice of claims pursuant to Section 52).

Plaintiff's only response to the Town Defendants' motion regarding the untimely notice of claim is a one sentence, conclusory statement in which plaintiff argues that the Town Defendants should be estopped from asserting such a defense because of their alleged fraud and "Campaign of Harassment" in this case. As discussed below, the Court finds that argument unpersuasive.

Section 50-e(5) provides that a court "[u]pon application" of a plaintiff may, in its discretion, extend the time to serve a notice of claim. However, although the Court of Appeals has not ruled on the issue, district courts in the Second Circuit have routinely found that they lack jurisdiction to even consider such an application. In *Corcoran v. New York Power Authority*, 202 F.3d 530, 540 (2d Cir. 1999), the court noted that the "appropriate state court may extend the time to file a notice of claim" under Section 50-e, but declined to decide "whether the federal court [had] such jurisdiction."

This Court agrees with the overwhelming weight of authority among district courts in the Second Circuit and finds that Section 50-e(7) permits only certain *state* courts – "the supreme court or . . . the county court" in certain counties – to consider and to grant an application for an extension of time. N.Y. Gen. Mun. Law § 50-e(7); *see, e.g., Brown v. Metropolitan Transp. Authority*, 717 F. Supp. 257, 258-61 (S.D.N.Y. 1989) (citing New York Gen. Mun. Law § 50-e(7)); *Horvath*, 423 F. Supp. 2d at 423 ("we lack authority to permit plaintiff to file a late Notice of Claim"); *Gibson v. Comm'r of Mental Health*, No. 04 Civ. 4350 (SAS), 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) ("Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice."); *Bunim v. City of New York*, No. 05 Civ. 1562 (KMK), 2006 WL 2056386, at *1 n.2 (S.D.N.Y. July 21, 2006) ("[T]his Court does not have jurisdiction to decide whether [p]laintiffs may file late Notices of Claim."); *Oshinsky v. New York City Housing Auth.*, No. 98 Civ. 5467 (AGS), 2000 WL 218395, at *14 n.5 (S.D.N.Y. Feb. 23, 2000); *Jewel v. City of New York*, No. 94 Civ. 5454 (DLB), 1995 WL 86432, at *1-*2 (S.D.N.Y. Mar. 1, 1995). In *Brown*, the district court found that "until the state legislature amends [Section 50-e(7)] to include federal trial courts, [the court has] no choice but to dismiss for lack of jurisdiction plaintiff's application to file a late notice of claim or to have his notice of claim deemed timely filed." 717 F. Supp. at 260. Similarly, in this case, the Court lacks jurisdiction, pursuant to Section 50-e(7), to deem plaintiff's state law claims timely filed.

Even assuming *arguendo* that this Court had jurisdiction to grant leave to file a late notice of claim, the Court would reject any such request on the merits. Specifically, the

Court rejects plaintiffs' "equitable estoppel" argument. Although plaintiff attempts to rely upon *Corona v. Gallinger Real Estate Better Homes & Gardens*, 642 N.Y.S.2d 802 (N.Y Sup. Ct. 1996), *aff'd*, 242 A.D.2d 961 (N.Y App. Div. 1997), that case is clearly distinguishable from the instant case. In *Corona*, plaintiffs did not realize until months after the alleged inspection by the Building Inspector (and issuance of the certificate of occupancy) that the inspection never occurred. *Id.* at 804. Thus, the court found that the town was estopped from arguing that plaintiffs were required to file a notice of claim within 90 days of the original issuance of the certificate of occupancy. *Id.* at 806. Here, the amended complaint makes clear that plaintiff was aware at all times about the alleged lack of any inspection on her home and, in fact, complained about the lack of inspection until it was performed in February 2006. Thus, it is clear that she possessed full knowledge of her alleged harm from a lack of the inspection for several months and the alleged faulty inspection in February 2006, but still did not file a timely notice of inspection. Therefore, there is no basis for any estoppel under the circumstances of this case. *See, e.g., Gouba v. Sportsman Props.*, No. 03-CV-5039 (JS)(WDW), 2006 WL 2792753, at *8 (E.D.N.Y. Sept. 26, 2006).

Accordingly, because plaintiff failed to serve a timely notice of claim on the Town, all of her state law claims against the Town and Salute are dismissed without prejudice. *See Gaffney*, 182 F. Supp. 2d 278 (dismissing NYHRL claims for failure to serve timely notice of claim); *Turner*, 955 F. Supp. 175 (same) (NYCSL 107 claim); *Flynn v. New York City Bd. of Educ.*, No. 00 Civ. 3775 (LAP), 2002 WL 31175229, at *9-*10 (S.D.N.Y. Sept. 30, 2002) (same) (New York Labor Law claim); *Alexander v. City of New York*, No. 02 Civ. 3555 (TPG), 2004 WL 1907432, at *22 (S.D.N.Y. Aug. 25, 2004) ("[T]he New York notice of claim requirement applies . . . to actions founded upon violations of state constitutional provisions."). Plaintiff can return to federal court with her pendent state law claims against the Town Defendants only after they have satisfied the condition precedent required by Sections 52 and 50-e – that is, after they have filed an application to the appropriate state court for leave to file a late notice of claim, that request has been granted, and such a notice has been filed. *See Brown*, 717 F. Supp. at 261; *Horvath*, 423 F. Supp. 2d at 425.

IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the federal Section 1983 equal protection claim is denied. The motion to dismiss the state law claims against the Town Defendants is granted. The motion to dismiss the state law claims against the AMD Defendants is denied.

The parties are instructed to proceed with discovery under the direction of Magistrate Judge Lindsay.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 25, 2009
      Central Islip, NY

\* \* \*

The attorney for the plaintiff is Melissa B. Levine, Esq., of Gold, Stewart, Kravatz,

Benes & Stone, LLP, 1025 Old Country Road, Westbury, New York 11590. The attorneys for the defendants Town of Hempstead and Salute are Lisa A. Cairo, Esq. and Laurel R. Kretzing, Esq., of Jaspan Schlesinger Hoffman, LLP, 300 Garden City Plaza, Garden City, New York, 11530. The attorneys for defendants DiSabato, AMD, and Jaramillo are David J. Sutton, Esq. and Anthony N. Elia, Esq., of The Law Offices of David J. Sutton, P.C., 1205 Franklin Avenue, Suite 320, Garden City, New York 11530. The attorney for defendants Matco Remodeling and Schwan is Mark A Panzavecchia, Esq., of Panzavecchia and Associates, PLLC, 1050 Franklin Avenue, Suite 300, Garden City, New York 11530.