# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 07-CV-3478 (JFB) (ARL)

————————————

JANICE A. CRIPPEN,

Plaintiff,

VERSUS

TOWN OF HEMPSTEAD, ET AL.,

Defendants.

————————————

**MEMORANDUM AND ORDER**
March 29, 2013

————————————

Joseph F. Bianco, District Judge:

Plaintiff Janice A. Crippen ("Crippen" or "plaintiff") brought this action against the Town of Hempstead ("TOH"), Carmine Salute ("Salute") (collectively, the "TOH Defendants"), Anthony M. DiSabato ("DiSabato"), AMD & Associates, Inc. ("AMD"), and Carlos Jaramillo ("Jaramillo") (collectively, the "AMD Defendants"), Matco Remodeling, Inc. ("Matco"), Matthew Schwan ("M. Schwan"), and Kimberly Schwan ("K. Schwan") (collectively, the "Matco Defendants") alleging a claim under 42 U.S.C. § 1983 ("Section 1983") for violations of her Fourteenth Amendment equal protection rights, as well as a number of causes of action under state law.

Presently before the Court are four motions for summary judgment made, pursuant to Rule 56 of the Federal Rules of Civil Procedure, by the TOH, Salute, the AMD Defendants, and the Matco Defendants.

For the reasons set forth below, the Court grants all four motions in their entirety as to the federal claim, and declines to exercise supplemental jurisdiction over the state law claims. More specifically, this case is about a dispute that plaintiff had with the TOH and various contractors regarding a $37,000 home improvement project on a bathroom in her Baldwin residence. Although plaintiff has attempted to transform this local dispute into a constitutional violation through a "class-of-one" equal protection claim under Section 1983 against the TOH Defendants, as well

as against non-state actors under a conspiracy theory, she has not uncovered any evidence to support her "class-of-one" claim after years of discovery. As discussed in detail below, even construing the evidence in the record most favorably to plaintiff, she simply has no evidence from which a rational jury could conclude that the TOH treated her differently than similarly situated individuals. Although plaintiff has many factual disputes about the renovation of her home and her dealings with the TOH, none of those disputes address whether or not she was treated differently than similarly situated individuals. On that critical issue, plaintiff has no evidence to create a factual dispute. Similarly, there is no evidence that could possibly support Section 1983 liability against the non-state actors. Thus, the federal claim cannot survive summary judgment, and the Court declines to exercise supplemental jurisdiction over any remaining state claims and the case is remanded to state court.

## I. BACKGROUND

### A. Factual Background

The Court has taken the facts set forth below from the parties' depositions, affidavits, exhibits, and respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has

not pointed to any evidence in the record to contradict it.[1]

### 1. Premises Violation

Plaintiff resides in a single-family home with her parents in Baldwin, New York, which is located within the Town of Hempstead. (Defs.' 56.1 ¶¶ 1-2.) On April 20, 2005, plaintiff's architect Mark Munisteri applied to the TOH for a building permit to perform a renovation of her home. (Decl. of Lisa. A. Cairo ("Cairo Decl.") Ex. F, Building Permit Application.) Although plaintiff submitted plans for a complete renovation, she intended to proceed in stages and to only initially renovate the lower level so that her mother could live there. (Defs.' 56.1 ¶ 16.) On or about July 31, 2005, plaintiff and Matco reached an agreement where Matco would be the contractor for the first phase of the renovation. (*Id.* ¶ 18.)

The renovation of the lower level was to include a bathroom renovation. (*Id.* ¶ 27.) This required changes to the underground and rough plumbing, which was to be performed by Jaramillo, a master plumber and a shareholder in AMD, or someone under his supervision. (*Id.* ¶¶ 10, 28-29.) On September 9, 2005, the TOH issued a Plumbing Permit for plaintiff's residence based on Jaramillo's application. (*Id.* ¶ 22.) Jaramillo did not perform the plumbing work himself. (*Id.* ¶ 33.) Plaintiff alleges that, although the TOH issued plumbing permits to Jaramillo, neither Jaramillo nor any AMD employees actually performed the work. Instead, the work was performed by unlicensed employees of Matco. (Third Am. Compl. ¶¶ 46, 64.) Plaintiff states that the

---

[1] Although the parties' Rule 56.1 statements contain specific citations to the record, the Court cites to the Rule 56.1 statements, rather than to the underlying citations.

work was actually completed by M. Schwan, through an arrangement with Danny Vacchio. (Pl.'s Mem. of Law in Opp'n to Summ. J. Mot. made by AMD Defs.' ("Pl.'s AMD Opp'n") at 1.) Plaintiff alleges that plumbing work was improperly performed, and that the failure to properly perform the plumbing work was due to the fact that the work was performed by individuals who did not possess a plumber's license, a prerequisite to performing plumbing work within the Town. (Third Am. Compl. ¶ 26.)[2] Plaintiff refers to this as the "Permit Scam" because Jaramillo, "in violation of TOH Code 86-40, which makes it illegal for a TOH licensed Master Plumber to allow his license to be used by another, obtained the permits for the [renovation to plaintiff's home] from the TOH so that Schwan could do the plumbing work under the color of a legitimate permit and get the work inspected." (*Id.* ¶ 59.) Defendants contend that Jaramillo actually reviewed the work after it was completed (Defs.' 56.1 ¶ 33), while plaintiff denies that this ever occurred (Pl.'s 56.1 ¶ 33).

Defendants state that, on September 13, 2005, Jaramillo met Salute, a plumbing inspector employed by the TOH, at plaintiff's residence to inspect the plumbing work. (Defs.' 56.1 ¶¶ 37-40.) Salute directed Jaramillo to make some changes before the work could be approved, and Salute returned the next day to confirm that the changes were made. (*Id.* ¶¶ 41-42.) Plaintiff denies that Salute ever met Jaramillo at the residence to inspect the work. (Pl.'s 56.1 ¶¶ 38-42.) Jaramillo performed no other

plumbing work at plaintiff's home. (Defs.' 56.1 ¶ 43.)

A dispute arose between plaintiff and Matco and the renovation work remained unfinished. (*Id.* ¶ 46.) In December 2005, Matco filed a mechanic's lien against plaintiff's home (*id.* ¶ 47), and informed the TOH that it was no longer working on the renovation "due to insufficient funds" (*id.* ¶ 48).

## 2. Request for an Inspection

Plaintiff contacted the TOH Buildings Department on December 21, 2005, and spoke to Salute on either that day or the next day. (Defs.' 56.1 ¶¶ 55-56.) Plaintiff requested that Salute inspect the plumbing, but Salute refused her request and told plaintiff that he had already performed an inspection in September. (*See id.* ¶¶ 57, 59.) In her complaint, plaintiff alleges that the TOH has a policy of inspecting a property "within and/or close to" 48 hours after receiving notice of a dangerous condition. (Third Am. Compl. ¶ 90.) However, plaintiff now admits that the TOH "does not have a policy of scheduling permit inspections within 48 hours but rather, as soon as possible after the request for inspection is made." (Defs.' 56.1 ¶ 113; Pl.'s 56.1 ¶ 113.) Plaintiff also admits that plumbing inspections are actually made at the request of the plumber to whom the permit is issued, and not the homeowner. (Defs.' 56.1 ¶ 112; Pl.'s 56.1 ¶ 112.)

On January 5, 2006, Michael Young ("Young"), a TOH Code Enforcement Officer, came to plaintiff's residence in response to a letter Matco had sent to the TOH requesting that its insurance be removed from the permit. (Defs.' 56.1 ¶¶ 69-70.) Young states that it is the usual

---

[2] The complaint also alleges that Schwan and/or other employees of Matco, none of whom had an electrician's license, performed unlicensed electrical work at the residence, which was not code compliant and put the residence at great risk of an electrical fire. (Third Am. Compl. ¶ 24.)

practice, after a contractor asks to have its insurance removed, to inspect the status of the construction and to advise the owner that she must obtain a new contractor with an insurance policy to keep the building permit in force. (*Id.* ¶ 71.) Young was denied access to the house by plaintiff's father (*id.* ¶ 69)[3] so Young returned the next day, (*id.* ¶ 73). Young states that he could not inspect the work because it was covered, and directed plaintiff to arrange for an inspection after she uncovered it. (Decl. of Michael Young ¶¶ 8, 13.)

In January of 2006, plaintiff had numerous communications with TOH employees including Salute and Raymond Schwarz ("Schwarz"), the Supervisor of Inspection Services, regarding plaintiff's concerns with the construction at her home, Salute's inspections, and plaintiff's difficulty in finding a new contractor. (Defs.' 56.1 ¶ 76; Pl.'s 56.1 ¶ 76.) On February 21, 2006, plaintiff and her attorney met with representatives of the TOH Attorneys' Office and the Building Department. (Defs.' 56.1 ¶ 77.) On February 27, 2006, the four building inspectors from the Town inspected plaintiff's residence; plaintiff and Jaramillo were also present. (*Id.* ¶ 78.)

### 3. The Alleged Harassment Campaign

Plaintiff alleges that defendants initiated a "harassment campaign" against her: (1) "in retaliation for her complaints to the TOH about the defective home improvements"; (2) "in retaliation for her complaints to the TOH about the Permit Scam and/or to cover-up the Permit Scam"; (3) "to protect the Defendants from liability for the defective home improvements and the Permit Scam"; and/or (4) to harass plaintiff into releasing "Jaramillo, AMD and DiSabato from liability for the defective home improvements." (Third Am. Compl. ¶ 89.)

Plaintiff alleges that the TOH, with the assistance of the non-TOH defendants, carried out this harassment campaign by: (1) telling "prospective plumbers not to sign onto Plaintiff's job and [telling] Plaintiff that she would have to release Jaramillo from responsibility for the plumbing before the TOH would permit a new plumber on the job"; (2) "unreasonably delay[ing] carrying forth its mandatory non-discretionary ministerial duty to inspect and document the dangerous electrical and plumbing conditions at Plaintiff's house"; (3) "den[ying] Plaintiff the right to participate in [a Plumbing Examination Board] Hearing concerning her complaints against [] Jaramillo"; (4) "serv[ing] Plaintiff with a Notice of Violation in connection with a tire and rusty rim on her property, and inform[ing] her that she had to cure this violation the same day that the Notice was issued, or she would receive a Desk Appearance Ticket"; and (5) "serv[ing] Plaintiff with a Desk Appearance Ticket in connection with the dangerous conditions at her house without first providing her with a Notice of Violation, giving her an opportunity to cure those violations." (*Id.* ¶ 90.) In one of her oppositions to summary judgment, plaintiff also alleges that the TOH denied her records regarding her property. (Pl.'s Mem. of Law in Opp'n to Summ. J. Mot. made by Town of Hempstead ("Pl.'s TOH Opp'n") at 19.)

---

[3] Plaintiff denies this fact, but plaintiff's testimony at her deposition supports defendants' statement of undisputed facts. (*See* Dep. of Janice A. Crippen, ECF No. 292 ("Crippen Dep.") at 66-67.)

### B. Procedural History

On July 31, 2007, plaintiff commenced this action in the Supreme Court of the State of New York, County of Nassau. Defendants removed the action to this Court on August 21, 2007.

Plaintiff filed a motion to amend on May 17, 2008. The TOH Defendants filed a memorandum in opposition on June 23, 2008, and the AMD Defendants filed their opposition on June 23, 2008. The Matco Defendants did not file any papers relating to this motion. Plaintiff filed a reply on July 20, 2008. Oral argument was held on July 25, 2008, at which time it was agreed that, as a procedural matter, plaintiff would be permitted to file the first amended complaint, dated May 16, 2008, and defendants' opposition papers to the motion to amend would be deemed to be a motion to dismiss the amended complaint. Following the oral argument, the defendants formally moved to dismiss the amended complaint, which was opposed by plaintiff. With respect to that motion, all parties incorporated and relied upon their prior memoranda of law and other submissions. In a March 25, 2009 Memorandum and Order, the Court denied the TOH Defendants' motion to dismiss plaintiffs' Section 1983 equal protection claims, but granted their motion to dismiss the pendent state law claims. Further, the Court denied the AMD Defendants' motion to dismiss the state law claims against them.

Plaintiff filed her second amended complaint on March 18, 2009, before the Court decided plaintiff's motion to amend. A third amended complaint in response to the Court's March 25 Memorandum and Order was filed on April 29, 2009.

On April 14, 2010, plaintiff submitted a letter to the Court requesting leave to file a fourth amended complaint. Plaintiff filed her motion papers on July 15, 2010. The AMD Defendants and the TOH separately filed opposition papers on August 16, 2010; Salute filed his opposition papers on August 18, 2010. Plaintiff filed her reply to the AMD Defendants' response on September 22, 2010 and to the TOH's and Salute's responses on September 29, 2010. In a Memorandum and Order dated March 31, 2011, the Court denied plaintiff's motion to amend the complaint.

On May 25, 2012, the TOH, Salute, the AMD Defendants, and the Matco Defendants filed four separate motions for summary judgment. Due to plaintiff's substitution of counsel and related discovery issues, plaintiff did not file her opposition to the TOH's, the AMD Defendants' and the Matco Defendants' motions for summary judgment until February 23, 2013, and did not file an opposition to Salute's motion for summary judgment until March 1, 2013. All of the defendants replied on March 15, 2013. The Court held oral argument on March 18, 2013. The Court has fully considered all of the submissions of the parties.

### II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d

Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. Discussion

#### A. Section 1983 Claim

Plaintiff asserts that defendants violated her constitutional rights under Section 1983. To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (citation and internal quotation marks omitted). Plaintiff asserts that her equal protection rights under the Fourteenth Amendment were violated under a "class-of-one" theory.

#### 1. Legal Standard

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated

individuals alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *see also Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (citations omitted)). In *Prestopnik v. Whelan*, the Second Circuit explained the difference between class-of-one equal protection claims and more traditional equal protection claims:

The Equal Protection Clause requires that the government treat all similarly situated people alike. While this clause is most commonly used to bring claims alleging discrimination based on membership in a protected class, it may also be used to bring a "class of one" equal protection claim. In a "class of one" case, the plaintiff uses the existence of persons in similar circumstances who received more favorable treatment than the plaintiff to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain.

249 F. App'x 210, 212–13 (2d Cir. 2007) (internal alterations, citations, and quotation marks omitted). In particular, as the Court sets forth below, in order to prevail on a class of one claim, a plaintiff must demonstrate that (1) she was treated differently from a similarly situated individual, and (2) the differential treatment was arbitrary and irrational.[4]

First, in order to succeed on a class-of-one claim, plaintiffs "must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (citation and internal quotation marks omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008). "This requires a showing that the level of similarity between the plaintiff and the person(s) with whom she compares herself is 'extremely high' – so high (1) that 'no rational person could

---

[4] In a footnote in its March 25, 2009 Memorandum and Order in this case, the Court stated, in dicta, that because of the Supreme Court's holding *in Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), plaintiff must also prove that defendants' actions (or lack of action) were non-discretionary, and that any inherently discretionary decisions based on an individualized determination could not support a class-of-one claim. *See Crippen v. Town of Hempstead*, No. 07-CV-3478, 2009 WL 803117, at *7 n.3 (E.D.N.Y. Mar. 25, 2009). However, after that opinion was issued, the Second Circuit, in *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010), held that "*Engquist* does not bar all class-of-one claims involving discretionary state action." *Id.* at 142. In particular, the Second Circuit held that plaintiffs may bring a class-of-one claim involving a discretionary action where "the state is exercising its regulatory and licensing power." *Id.* at 142-43. However, *Analytical Diagnostic* does not affect the outcome of this case because, as discussed *infra*, the Court has reviewed all of plaintiff's claims, even those that involve a discretionary duty by a government official (including actions the Court stated in its March 25, 2009 Memorandum and Order could not support a class-of-one claim), and finds that plaintiff's claims cannot survive summary judgment. Specifically, plaintiff has not introduced sufficient admissible evidence for a rational jury to conclude that plaintiff was treated less favorably than *prima facie* identical comparators with respect to any alleged action or decision in this case, whether discretionary or non-discretionary.

regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy,' and (2) that 'the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.'" *Prestopnik*, 249 F. App'x at 213 (quoting *Neilson*, 409 F.3d at 104-05). "This showing is more stringent than that used at the summary judgment stage in the employment discrimination context . . . because the existence of persons in similar circumstances who received more favorable treatment than the plaintiff in a class-of-one case is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (internal citation and quotation marks omitted).

Although the determination of whether parties are similarly situated is generally a "fact-intensive inquiry," "[a] court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation [] where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated." *Id.*; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010) (affirming dismissal of class-of-one claim when plaintiffs' comparators were not similar to plaintiffs, "let alone so similar that no rational person could see them as different"); *Neilson*, 409 F.3d at 106 (holding that despite a jury's verdict in plaintiff's favor, no rational jury could have concluded that plaintiff and the comparators were similar enough to support a class-of-

one claim); *Everitt v. DeMarco*, 704 F. Supp. 2d 122, 135 (D. Conn. 2010) (granting defendants' motion for summary judgment where plaintiff admitted that she was unaware of any other similarly situated individuals).

Second, plaintiffs must prove that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diagnostic*, 626 F.3d at 140 (quoting *Olech*, 528 U.S. at 564) (internal quotation marks omitted). It is not sufficient that the act itself be intentional; instead, a plaintiff must demonstrate that "the decisionmakers were aware that there were other similarly-situated individuals who were treated differently." *Id.* at 143; *see also Morningside Supermarket Corp. v. N.Y. State Dep't of Health*, 432 F. Supp. 2d 334, 341 (S.D.N.Y. 2006) ("A plaintiff must [] establish . . . that the irrational disparate treatment was intentional, that is, that the defendants 'knew' they were treating the plaintiff differently from everyone else." (quoting *Giordano v. City of N.Y.*, 274 F.3d 740, 751 (2d Cir. 2001))).

Courts, including the Second Circuit, have repeatedly cautioned about the danger of ordinary disputes between a citizen and a municipality – whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments – being transformed into federal lawsuits by an incorrect, over-expansive theory of class-of-one liability. *See Bizzarro v. Miranda*, 394 F.3d 82, 88-89 (2d Cir. 2005) ("*Olech* does not empower federal courts to review government actions for correctness. Rather, an *Olech*-type equal protection claim focuses on whether the official's conduct was rationally related to the accomplishment of the work of their

agency."); *see also Geinosky v. City of Chi.*, 675 F.3d 743, 747 (7th Cir. 2012) ("Courts have understood that if class-of-one claims are not defined appropriately, they might turn many ordinary and inevitable mistakes by government officials into constitutional violations and federal lawsuits."); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216-17 (10th Cir. 2011) ("We have approached class-of-one claims with caution, wary of turning even quotidian exercises of government discretion into constitutional causes. . . . These concerns are magnified with challenges to low-level government decision-making, which often involves a great deal of discretion. The latitude afforded police officers, . . . zoning officials, and other similar government actors necessarily results in a sizeable amount of random variation in outcome. If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed." (internal citations and quotation marks omitted)); *Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n*, 610 F.3d 8, 16 (1st Cir. 2010) ("Drawing distinctions is what legislators and regulators do every day: without this comparability sieve, every routine governmental decision at the state and local level – of which there are millions every year – could become a class-of-one case in federal court."); *Cordi-Allen v. Conlon*, 494 F.3d 245, 252 (1st Cir. 2007) ("The burden that a class of one plaintiff must carry at the summary judgment stage is considerably heavier than a mere showing that others have applied, with more auspicious results, for the same benefit that he seeks. . . . Were the law otherwise, the federal court would be transmogrified into a super-charged version of a local zoning board – a zoning board on steroids, as it were."); *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004) ("Even if

[plaintiff] was wronged here, we do not believe that he has shown the wrong to be discriminatory in nature. Every time an actor commits a tort, he may be treating the victim differently than he frequently treats others, simply because tortious conduct is by nature a departure from some norm. Nonetheless, the purpose of entertaining a 'class on one' equal protection claim is not to criminalize all tort law nor to transform every claim for improper provision of municipal services or for improper conduct of an investigation in connection with them into a federal case." (citations omitted)).

Thus, plaintiffs cannot attempt to federalize every such dispute with a municipality by simply uttering the magic words "class-of-one," without also pointing to any evidence that all other similarly situated individuals received more favorable treatment than the plaintiff. That is precisely what plaintiff is doing in this case. For years, plaintiff has been on a futile search for a theory of federal jurisdiction. Once the case was removed from state court because of the alleged federal civil RICO claim, and plaintiff withdrew that ill-conceived claim, plaintiff embarked on a mission to maintain her state law claims in federal court through a newly, asserted class-of-one theory. Although plaintiff was able to plead such a claim in a manner to withstand a motion to dismiss, she has uncovered no evidence of such a theory despite years of discovery. In fact, her own opposition papers speak volumes about the lack of such evidence by arguing, at least in parts, the exact opposite – for example, that the Town had a policy of not enforcing Section 86-40 of its Code, rather than singling out plaintiff for such treatment. As discussed in detail below, plaintiff has failed to cite to any evidence from which a rational jury could conclude that she was singled out for mistreatment as

to any of the decisions or actions at issue, and could find that the defendants are liable for "class of one" discrimination. Accordingly, the Section 1983 claim cannot survive summary judgment.

## 2. Analysis

As discussed *supra*, plaintiff alleges that the TOH defendants, with the assistance of the non-TOH defendants, improperly singled her out and initiated a harassment campaign against her by: (1) telling "prospective plumbers not to sign onto Plaintiff's job and [telling] Plaintiff that she would have to release Jaramillo from responsibility for the plumbing before the TOH would permit a new plumber on the job"; (2) "unreasonably delay[ing] carrying forth its mandatory non-discretionary ministerial duty to inspect and document the dangerous electrical and plumbing conditions at Plaintiff's house"; (3) "den[ying] Plaintiff the right to participate in [a Plumbing Examination Board] Hearing concerning her complaints against [] Jaramillo"; (4) "serv[ing] Plaintiff with a Notice of Violation in connection with a tire and rusty rim on her property, and inform[ing] her that she had to cure this violation the same day that the Notice was issued, or she would receive a Desk Appearance Ticket"; and (5) "serv[ing] Plaintiff with a Desk Appearance Ticket in connection with the dangerous conditions at her house without first providing her with a Notice of Violation, giving her an opportunity to cure those violations." (Third Am. Compl. ¶ 90.) In one of her oppositions to summary judgment, plaintiff also alleges that the TOH denied her records regarding her property. (Pl.'s TOH Opp'n at 19.)

However, plaintiff has not introduced sufficient admissible evidence for a rational jury to find that that any of these alleged actions constitute a violation of plaintiff's equal protection rights, because plaintiff has not identified any *prima facie* identical comparators, nor has plaintiff introduced evidence to support that she was treated differently by defendants. Therefore, defendants' motions for summary judgment as to the federal claim are granted, and plaintiff's class-of-one claim must be dismissed. The Court will discuss in turn each action alleged to have been taken by each defendant.

### a. TOH Defendants

#### i. Inspection

The TOH's duties in connection with a request for an inspection of a dangerous condition are set forth in Town Code §§ 90-4 and 86-5. Town Code § 90-4(A) provides that:

> Upon receipt of information that a building or structure may be dangerous, the Commissioner of Buildings shall cause an investigation of the premises to be made and an inspection report submitted and filed in his office.

Town Code § 86-5(E) provides that:

> [The Building Inspector] shall, on complaint or other information, examine existing and completed buildings and structures, as well as buildings and structures under construction, and shall issue all appropriate notices or orders to remove illegal or unsafe conditions, to require the necessary safeguards during the construction and to insure compliance during the entire course

of construction with the requirements of such laws, ordinances and regulations. He shall make all inspections which are necessary or proper for the carrying out of his duties, except that he may accept written reports of inspection from other employees of the Department of Buildings or from generally recognized and authoritative service and inspection bureaus, provided the same are certified by a responsible official thereof.

Although these provisions do not set forth a time period during which the inspection must be performed, plaintiff alleges that the TOH has a policy of inspecting a property "within and/or close to" 48 hours after receiving notice of a dangerous condition. (Third Am. Compl. ¶ 90.) Plaintiff continues to assert in her opposition to summary judgment that it is "undisputed" that plaintiff's inspection was delayed. (Pl.'s TOH Opp'n at 14.)

However, plaintiff now admits two crucial facts that are fatal to her case. First, she admits that plumbing inspections "are made at the request of the plumber to whom the permit is issued – not the homeowner." (Defs.' 56.1 ¶ 112; Pl.'s 56.1 ¶ 112.) Plaintiff also admits that the TOH "does not have a policy of scheduling permit inspections within 48 hours but rather, as soon as possible after the request for inspection is made." (Defs.' 56.1 ¶ 113; Pl.'s 56.1 ¶ 113.) Because plaintiff admits that the TOH does not schedule plumbing inspections after calls from homeowners, and that the TOH does not actually have a policy of scheduling inspections within 48 hours as she once alleged, there is no disputed issue of material fact regarding whether plaintiff was treated less favorably than other homeowners when she did not receive an inspection within 48 hours.

Even construing all reasonable inferences in plaintiff's favor, and assuming that there is a disputed issue of material fact as to whether plaintiff's inspection was unreasonably delayed, plaintiff's class-of-one claim must still fail because plaintiff has failed to identify comparators who are "*prima facie* identical in all material respects" and were treated more favorably. *Neilson*, 409 F.3d at 104 (citation and internal quotation marks omitted). Plaintiff asserts that she was treated less favorably than Mark Nash ("Nash") and Gary Teicher ("Teicher"), two homeowners that live next door to each other on Shore Road in Merrick, New York. (Defs.' 56.1 ¶ 130; Crippen Dep. at 263-67.)[5] Construing the facts in a light most favorable to plaintiff, it appears that these homeowners received prompt inspections once the TOH learned of dangerous conditions at their homes in July and August 2007. (*See* Defs.' 56.1 ¶¶ 132-141; Crippen Dep. at 266.) However, Schwarz asserts that Nash's and Teicher's situations were more serious than plaintiff's because the Nash's residence had "serious structure defects . . . which could lead to a building collapse" (Declaration of Raymond Schwarz ("Schwarz Decl.") ¶ 40), while Teicher's residence "had issues pertaining to roof support" (*id.* ¶ 41). Plaintiff asserts that she is comparable to these homeowners. She claims that she had a sufficiently serious

---

[5] Plaintiff denies that "she takes the position that her situation is identical to" these homeowners. (Pl.'s 56.1 ¶ 130). However, plaintiff's submission does not identify any other comparators. A plaintiff's failure to introduce "any evidence of similarly situated" comparators to oppose a motion for summary judgment is grounds for dismissal of a class-of-one claim. *See, e..g., Maulding Dev., LLC v. City of Springfield, Ill.*, 453 F.3d 967, 971 (7th Cir. 2006).

condition to warrant prompt inspection because Schwarz stated at his deposition that there could be a concern with improper plumbing that there was improper ventilation and that sewer gases would backup. (Decl. of James M. Maloney, ("Maloney Decl.") Ex. 17, Dep. of Raymond Schwarz ("Schwarz Dep.") at 85.) However, Schwarz also stated that he did not view plaintiff's residence at the time to be an "unsafe building" (*id.* at 84), and that he did not "smell any sewer gasses or sewage smells" (Schwarz Decl. ¶ 32). Not only does plaintiff fail to direct the Court to any admissible evidence to contradict Schwarz' testimony, plaintiff has not demonstrated an "extremely high degree of similarity between" herself and these comparators. *Valentin*, 468 F.3d at 159. Therefore, given the lack of any evidence to contradict Schwarz, "no reasonable jury could find that the persons to whom the plaintiff compares [herself] are similarly situated." *Id.*; *see also RJB Props., Inc. v. Bd. of Educ. of City of Chi.*, 468 F.3d 1005, 1010 (7th Cir. 2007) (stating that a plaintiff "bears a very significant burden of offering evidence that other entities are similarly situated in all relevant respects" (citation and internal quotation marks omitted)).

Plaintiff attempts to bolster her allegation against Salute by claiming that there is a disputed issue of fact as to whether Salute actually inspected her residence in September of 2005 and whether he lied to plaintiff when she called him in December 2005. Although plaintiff is correct that this issue is disputed, this is not a disputed issue of *material* fact because whether Salute lied to plaintiff is immaterial to her class-of-one claim if she cannot support her allegation that she was "treated differently." Simply because Salute may have lied to plaintiff about whether he inspected the home does not mean plaintiff was treated less favorably; plaintiff provides no evidence that Salute was truthful to other individuals in her situation. *See Maulding*, 453 F.3d at 971; *Hopkins v. DeStefano*, No. 07-CV-1742, 2009 WL 4349535, at *6 (D. Conn. Nov. 25, 2009) (holding that a "broad-brush reference" without identifying specific comparators is insufficient to defeat a motion for summary judgment). Therefore, plaintiff's class of one claim regarding the inspection must also be dismissed against Salute.

Even assuming *arguendo* that Nash and Teicher are appropriate comparators, plaintiff has not adequately alleged that she was intentionally treated differently from these individuals without a rational basis. The TOH received notice of the dangerous conditions at Nash's and Teicher's residences at least eighteen months after plaintiff requested an inspection. (*See* Defs.' 56.1 ¶¶ 131-141.) Therefore, plaintiff cannot demonstrate that "the decisionmakers were aware that there were other similarly-situated individuals who were treated differently" since the TOH clearly could not have been aware of how those comparators would be treated in the future. *Kusel*, 626 F.3d at 143.

ii. Failure to Enforce Town Law

Town Code § 86-40 states: "No master plumber shall, directly or indirectly, allow his license to be used in connection with work not actually done by him or under his supervision." As discussed *supra*, plaintiff believes that Jaramillo violated the Code by allowing his licenses to be used without supervising the renovations. Plaintiff accuses the TOH of deliberately failing to enforce Section 86-40. (*See* Pl.'s TOH Opp'n at 7 ("The only question that remains

is whether the Town's official policy or custom . . . was one of laxity or 'deliberate indifference' with regard to whether a licensed plumber could sign a plumbing permit or act as an agent for a person who was not a licensed plumber in the Town of Hempstead . . . .").)

Although there may be a disputed issue of fact regarding whether the TOH failed to enforce this provision, no rational jury could find that plaintiff's equal protection rights were violated because plaintiff does not even allege that she was treated less favorably than other homeowners in this regard. Plaintiff states that the TOH had a "custom" of failing to enforce this provision. (*Id.* at 10.) If the TOH had a policy of non-enforcement of the building code, plaintiff could not have been "treated differently." *Olech*, 528 U.S. at 645; *see also Manufactured Home Cmtys., Inc. v. Cnty. Of San Diego*, 269 F. App'x 627, 628 (9th Cir. 2008) ("[Plaintiff's] claim to have suffered a violation of Equal Protection as a 'class of one' demonstrates that any injury it suffered here could not have been an instance of a long-standing custom . . . ."). Even assuming *arguendo* that plaintiff did not accuse the TOH of having a custom or policy of failing to enforce this law, plaintiff's class-of-one claim must be dismissed because she has failed to identify any comparators. *See Maulding*, 453 F.3d at 971.

### iii. Dissuading Contractors From Working on Plaintiff's Residence

In her complaint, plaintiff alleges that the TOH told "prospective plumbers not to sign onto Plaintiff's job." (Third Am. Compl. ¶ 90.) Plaintiff fails to defend this assertion in her opposition to the TOH's motion for summary judgment. Plaintiff

does deny defendants' statement of undisputed facts regarding this allegation, but then fails to direct the Court to any evidence to support her claim. In her declaration in opposition to summary judgment, plaintiff includes several quotes from contractors insinuating or speculating that they did not work on her residence because plaintiff's "house was black listed" by the TOH and Salute. (Decl. of Janice Crippen ("Crippen Decl.") ¶ 22.) However, inadmissible hearsay cannot "raise a triable issue of fact sufficient to defeat a motion for summary judgment." *Rosensaft v. Ashton Tech. Grp., Inc.*, No. 97-CIV-3138, 1997 WL 749384, at *3 (S.D.N.Y. Dec. 4, 1997) (citing *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 357 (2d Cir. 1997)) (additional citations omitted). Because this evidence is inadmissible, no rational jury could find that the TOH intentionally treated plaintiff less favorably by dissuading contractors to work on her residence.[6]

### iv. Records

In her opposition to the TOH's motion for summary judgment, plaintiff asserts that the TOH treated her less favorably than other homeowners when Schwarz denied plaintiff access to her records regarding her property. (Pl.'s TOH Opp'n at 19.) Plaintiff did not assert this claim in her Third Amended Complaint. "Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts . . . have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407

---

[6] In any event, this claim also must fail because plaintiff has failed to identify any comparators. *See Maulding*, 453 F.3d at 971.

(S.D.N.Y. 2000) (citation and internal quotation marks omitted). In fact, plaintiff's prior counsel withdrew any claim arising under New York's Freedom of Information Law related to these records.

Even if the Court could consider this new claim, plaintiff has again failed to adequately assert a class-of-one claim because she does not identify which individuals did properly receive their records. It is not enough for plaintiff to allege that she was treated unfairly, to support a class of one claim, plaintiff must allege that she was "treated differently." *Olech*, 528 U.S. at 645. In *Maulding*, the Seventh Circuit affirmed the district court's granting of summary judgment when plaintiff suggested it was treated differently, "[b]ut there [was] no evidence in the record that would even establish this basic fact." 453 F.3d at 971. Since plaintiff "introduce[d] no evidence regarding any of the other [homeowners], not a single one," plaintiff's claim that she was improperly denied her records must be dismissed. *Id.*; *see also Hopkins*, 2009 WL 4349535, at *6.

v. Notice of Violation

When the TOH learns of an unsanitary or unsafe condition at a residence, it issues the homeowner a "Notice of Violation" which requires the homeowner to immediately "cease and desist" that condition. (*See* Cairo Decl. Ex. CCC, Examples of Notices of Violation; Defs.' 56.1 ¶¶ 143-144.) Plaintiff alleges that the TOH continued in its harassment campaign by "serv[ing] Plaintiff with a Notice of Violation in connection with a tire and rusty rim on her property, and inform[ing] her that she had to cure this violation the same day that the Notice was issued, or she would receive a Desk Appearance Ticket." (Third

Am. Compl. ¶ 90.) Plaintiff also fails to defend this claim in her opposition to the TOH's motion for summary judgment.

Plaintiff's claim again fails because she no longer alleges that she was treated differently. In fact, plaintiff admits that "Notices of Violation are frequently issued by the Town without providing a time to cure. Like [plaintiff,] other homeowners were directed to cure the condition forthwith or immediately." (Defs.' 56.1 ¶ 143; Pl.'s 56.1 ¶ 143.) No rational jury could find that plaintiff was treated less favorably when she herself admits that the TOH issued her a Notice of Violation similar to those issued to numerous other homeowners. *See Hafez v. City of Schenectady*, -- F. Supp. 2d --, No. 10-CV-541, 2012 WL 1368157, at *20 (N.D.N.Y. Apr. 19, 2012) ("Although Plaintiff alleges that these other comparators were not issued notices of violations for their alleged building code violations, he submits no competent summary judgment evidence to support his assertions."); *Everitt*, 704 F. Supp. 2d at 135 (granting defendants' motion for summary judgment where plaintiff admitted that she was unaware of any other similarly situated individuals).[7]

vi. Desk Appearance Ticket

New York law "gives a police officer discretion in certain cases to issue a so-called desk appearance ticket ('DAT') to an arrestee rather than holding him or her in

---

[7] The TOH states that the Notice of Violation was actually issued by a sanitation officer from Sanitary District No. 2, and not by the TOH or any individual employed by the TOH. (Defs.' 56.1 ¶¶ 144-47.) Although plaintiff denies this fact without sufficient evidence to support her assertion, the Court need not resolve this issue because even if the TOH did issue the Notice of Violation, plaintiff has not introduced any evidence to support her class-of-one claim regarding this action.

custody until a judge is available to conduct an arraignment. Under this procedure, the arrestee is released and must return to the criminal court at a future date for arraignment." *Bryant v. City of N.Y.*, 404 F.3d 128, 132 (2d Cir. 2005) (citing N.Y. Crim. Proc. Law §§ 150.10(1), 150.20 (McKinney 2004)). Plaintiff alleges that the TOH continued its harassment campaign by serving her with a DAT regarding the dangerous conditions at her home caused by her renovations "without first providing her with a Notice of Violation, giving her an opportunity to cure those violations." (Third Am. Compl. ¶ 90.) The TOH claims that it was not aware of plaintiff's Notice of Claim regarding her renovations. (Defs. 56.1 ¶ 149.) The TOH withdrew the DAT and plaintiff was never prosecuted. (*Id.* ¶ 151.)

The parties dispute whether plaintiff's Notice of Claim regarding her renovations played any role in the TOH's issuance of the DAT, and whether Schwarz notified plaintiff that she needed to fix the conditions at her home. However, plaintiff again fails to identify any comparators to prove that she was treated less favorably than individuals that are *prima facie* identical. *See Maulding*, 453 F.3d at 971 ("[Plaintiff's] sweeping argument that it was treated differently than any other developer has ever been treated, with no evidentiary support, has no specificity. . . . [T]he district court was correct in determining that [plaintiff] had not introduced any evidence of similarly situated developers." (internal alterations and quotation marks and omitted)). Because plaintiff must introduce evidence that she was treated less favorably than other homeowners, and not simply unfairly, to support a class-of-one claim, plaintiff's claim regarding the DAT must also be dismissed.

vii. Plumbing Examining Board

The TOH has a Plumbing Examining Board ("PEB") which "examine[s] each applicant for a license to determine his qualifications for a master plumber's license under this code and [] recommend[s] to the Building Inspector that a license be issued to each applicant who passed and qualified at such examination." Town Code § 86-35. The Code states that the Town Board, and not the PEB, has the power to revoke licenses. *Id.* § 86-39. However, defendants admit that "the PEB will informally interview a plumber after a complaint has been made from a Town constituent to determine whether a license suspension should be made but the PEB does not have the power to suspend a [master] plumber's license." (Defs.' 56.1 ¶ 154.) If work has been performed without a permit, the PEB refers the matter to the Town Attorney's Office. (Decl. of Anthony M. DiSabato ¶ 23.) DiSabato, one of Jaramillo's partners at AMD, is a member of the PEB. (Defs.' 56.1 ¶ 155.)

Plaintiff alleges two improper acts by the PEB. First, plaintiff claims that DiSabato did not properly recuse himself from a May 23, 2006 PEB meeting in which plaintiff's complaint against Jaramillo was to be discussed. (Pl.'s AMD Opp'n at 13.) Second, plaintiff states that she was improperly excluded from that meeting. (*Id.*; *see also* Crippen Decl. ¶ 45.)

With respect to the alleged failure by DiSabato to recuse himself in the matter before the PEB, that allegation cannot provide a basis for a "class-of-one" claim in this case for two independent reasons. First, as noted in the Court's March 25, 2009 Memorandum and Order, this contention cannot possibly be brought as a "class-of-

one" claim because the amended complaint did not allege that she was singled out in this respect, but rather alleged a pattern of failing to recuse. (*See* Am. Compl. ¶ 93 ("TOH employees have a history of violating [the conflict-of-interest provision] in the course of exercising their duties in the inspection process of TOH Properties with the resulting violation of property owner's constitutional rights.").) Thus, given this allegation, the Court concluded that, even if this non-discretionary decision were actionable after *Engquist*, it cannot form the basis for a plausible "class-of-one" claim. *See Crippen*, 2009 WL 803117, at *7 n.3 ("Given that allegation of a pattern with respect to conflicts of interest, no 'class of one' claim could arise for any such alleged violation."). That determination continues to be law of the case. Second, in any event, plaintiff has failed to put forth any evidence that DiSabato did not recuse himself. DiSabato has submitted a sworn statement indicating that he left the room when the PEB addressed the Crippen matter. (*See* DiSabato Decl. ¶ 24 ("Based on my position on the PEB, I was aware that Mr. Jaramillo came before the Board for an interview on March 23, 2006 concerning plumbing work performed at plaintiff's home. While I was present that evening, the Chairman of the PEB, John Krull, asked me to leave the room. After I left the room, Mr. Jaramillo was apparently briefly interviewed by the other three Board members present that evening who could have taken any action they deemed appropriate since they constituted 75% of the voting Board members present that day.").) Plaintiff has no evidence to suggest that DiSabato did not leave the room, but merely speculates that he did not because there is no documentation of that fact in the Board minutes. However, such speculation is insufficient to create a material issue of fact,

even if plaintiff had not alleged a pattern of conduct in her complaint that foreclosed a "class-of-one" claim.[8]

With respect to the alleged exclusion from the meeting, the TOH has provided evidence, in the form of meeting minutes, which shows that the PEB operated only as an informal mediator and that other homeowners, like plaintiff, were told that their complaints were best addressed as a civil matter. (*See* Crippen Decl. Ex. 57, Town of Hempstead Plumbing Board Minutes, at 4 ("This board is neither a judge nor a jury."); *id.* at 6 ("Mr. Pfeffer's complaint is best addressed in court, and a judgment would be most helpful if brought to our attention.").) Again, plaintiff's complaint and opposition to summary judgment fails to identify *any* comparators, let alone *prima facie* identical comparators, to support her class-of-one claim. Plaintiff's conclusory allegation in her complaint that "others [were] permitted to participate in hearings" regarding their grievances (Third Am. Compl. ¶ 90), is simply insufficient to defeat a motion for summary judgment.[9] *See*

---

[8] In addition, as defendants note, the other three PEB members at that meeting could have cast a majority vote against Jaramillo if there was a valid and reasonable basis for doing so. Thus, it is unclear why plaintiff believes that DiSabato's alleged failure to recuse had any impact on the outcome of her matter.

[9] The TOH anticipated that plaintiff would use Mr. and Mrs. Casciano, Mr. Cinnamon, and an individual named "Barnes" as comparators to support her class-of-one claim. (*See* TOH's Mem. of Law in Supp. of its Mot. for Summ. J. ("TOH's Mem.") at 19-20; Defs.' 56.1 ¶¶ 158-163.) However, plaintiff's oppositions to the motions for summary judgment do not identify these comparators or indicate to the Court how they are *prima facie* identical to plaintiff. Therefore, even if the Court did find that plaintiff had identified comparators, the Court would still dismiss this claim because plaintiff has not introduced any evidence to contest defendants' statement of undisputed facts claiming that these residents are not

*Hopkins*, No. 07-CV-1742, 2009 WL 4349535, at *6. Moreover, plaintiff has failed to articulate what harm she suffered from being prevented from appearing before the PEB.

In short, there is no evidence to support an equal protection claim with respect to any actions of the PEB.

### viii. Releasing Jaramillo From Liability

Plaintiff also makes a claim against Salute, alleging that he improperly required her to release Jaramillo from liability for the defective renovations to her home. (Third Am. Compl. ¶ 90.) Plaintiff testified that Salute told her she "would have to absolve the current plumber" in order to continue with her renovations. (Crippen Dep. at 90.) Salute claims that he never told plaintiff that she had to release Jaramillo from liability, but that he merely explained to her how to replace her plumber pursuant to Town policy. (Dep. of Carmine Salute, ECF No. 292-13, at 134.) In particular, the TOH Defendants have provided evidence of their policy requiring a homeowner who wishes to replace a plumber to submit a notarized letter or affidavit stating that the original plumber is being relieved from performing the plumbing work, and is being replaced by

similarly situated to plaintiff. *See Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) ("Generally, the plaintiffs' failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." (citations and internal quotation marks omitted)). In any event, as defendants note, Mr. and Mrs. Casciano did not receive more favorable treatment because the outcome was the same as plaintiff – namely, that the parties concluded that the complaint was best addressed as a civil matter. (Crippen Decl. Ex. 57, Town of Hempstead Plumbing Board Minutes, at 1.)

a new plumber. Thus, according to the defendants, after such a procedure is followed, the plumber is released from the plumbing work, not from any legal liability. (Defs.' 56.1 ¶ 110.) Although plaintiff claims that she was required to release Jaramillo from liability, she admits that the letter she submitted replacing Jaramillo was accepted by the Town and does not contain any language releasing Jaramillo from legal liability. (Pl.'s 56.1 ¶ 107; Cairo Decl. Ex. NN, Letter from Janice Crippen to James Dalto.) Defendants also introduced evidence that, with the exception of one homeowner whose letter was not notarized, other homeowners were required to submit notarized letters similar to plaintiff's in order to replace their plumbers. (Cairo Decl. Exs. HHH-KKK.) Plaintiff disputes that other homeowners who wished to replace their plumbers were required to submit such letters, but does not provide any evidence to support her assertion. (Pl.'s 56.1 ¶ 110.)

Assuming *arguendo* that there is a disputed issue of material fact regarding whether Salute improperly told plaintiff that she needed to release Jaramillo from liability, such a class-of-one claim cannot survive summary judgment. As with her other claims, plaintiff fails to identify any comparators who were told something different by Salute. In fact, as noted above, there is evidence that other homeowners were required to submit a letter similar to the one plaintiff sent to the TOH. The Court cannot find that plaintiff has sufficiently supported a class-of-one claim simply because she speculates that Salute treated her differently on this issue. *Maulding*, 453 F.3d at 971. Because plaintiff has not introduced evidence of individuals who were treated more favorably than her, plaintiff's class-of-one claim fails as a

matter of law. *See, e.g., Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 F. App'x 887, 898 (10th Cir. 2010) ("[Plaintiff] does not demonstrate that it was treated differently than one similarly situated. It does not present a sufficient comparator. Summary judgment on [plaintiff's] equal protection claim is therefore appropriate, because no reasonable jury could find that the similarly situated requirement has been met.").[10]

### b. *Monell* Liability

Although plaintiff does not explicitly assert a *Monell* claim, plaintiff's complaint alleges that the TOH is liable for the conduct of its employees because (1) it did not train or supervise the employees; (2) the TOH demonstrated a deliberate indifference to upholding the Town Code; (3) the TOH ratified the behavior of its employees. (Third Am. Compl. ¶¶ 91-94.) The TOH argues that, even if plaintiff could support her class-of-one claim, she cannot prove that the violation of her rights was a result of an official policy or custom. (TOH's Mem. at 21-25.)

The Supreme Court has explained that a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 694 (1978). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). Instead, constitutional violations by government officials that are "persistent and widespread" can be "so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability." *Sorlucco*, 971 F.2d at 870-71 (citing *Monell*, 436 U.S. at 691) (internal quotation marks omitted). Moreover, a policy, custom or practice of the entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44). However, a municipal entity may only be held liable where the entity *itself* commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

Because plaintiff has not demonstrated any constitutional violations by Salute, DiSabato, or any other individual employed by the TOH, there is no basis on which she could predicate *Monell* liability against the TOH. When a plaintiff lacks any underlying claim of a deprivation of a constitutional right, the claim of municipal liability on the part of the municipal defendant must be dismissed as well. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

---

[10] Because the Court has determined that no rational jury could find that Salute violated plaintiff's equal protection rights, the Court need not address whether Salute is entitled to qualified immunity. *See Kelsey v. Cnty. Of Schoharie*, 567 F.3d 54, 62 (2d Cir. 2009) ("When the facts, viewed in light most favorable to the plaintiff, do not demonstrate that an officer's conduct violated a constitutional right, the court need not further pursue the qualified immunity inquiry, and the officer is entitled to summary judgment." (citation and internal quotation marks omitted)).

### c. DiSabato

It appears that plaintiff's claim against the TOH regarding DiSabato's failure to properly recuse himself is also asserted against DiSabato. (*See* Pl.'s AMD Opp'n at 13-19.) Plaintiff's claim must be dismissed for the same reasons as discussed *supra* Part III.2.a.vii. Plaintiff's conclusory assertion that she was treated less favorably than other homeowners by the PEB and DiSabato is simply insufficient to defeat a motion for summary judgment. Accordingly, plaintiff's claim against DiSabato regarding the PEB hearing must be dismissed.[11]

### d. AMD Defendants

In her third amended complaint, plaintiff asserts that the non-TOH defendants (which presumably includes the AMD Defendants) are liable under Section 1983 because they "assist[ed]" the TOH in carrying forth its harassment campaign against plaintiff. (Third Am. Compl. ¶ 90.) Plaintiff does not, however, support this conspiracy claim in her opposition to the AMD Defendants' motion for summary judgment.

An individual acts under color of state law when he or she exercises power "'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "Private parties are generally not amenable to suit under § 1983, because they are not state actors, although they may be liable where there is a sufficiently close nexus between the State and the challenged action of the private party so that the action of the latter may be fairly treated as that of the State itself, or where they are jointly engaged with state officials in a conspiracy to deprive the plaintiff of his constitutional rights." *Bhatia v. Yale Sch. of Med.*, 347 F. App'x 663, 664–65 (2d Cir. 2009) (alterations, citations, and internal quotation marks omitted).

To demonstrate that a private party defendant was a state actor engaged in a conspiracy with other state actors under Section 1983, a plaintiff must allege: (1) an agreement between the private party and state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal. *See Carmody v. City of N.Y.*, No. 05–CV–8084, 2006 WL 1283125, at *5 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy to violate a plaintiff's constitutional rights must be dismissed. *See Ciambriello*, 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983." (citing *Ciambriello*, 292 F.3d at 325)); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Green v. Bartek*, No. 05-CV-1851, 2007 WL 4322780, at *3 (D.Conn. Dec.7, 2007) ("The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations.").

---

[11] For the reasons set forth *supra* n.10, the Court need not address whether DiSabato is entitled to qualified immunity.

Plaintiff has introduced no evidence (not even circumstantial evidence) that the AMD Defendants conspired with the TOH or its employees in the alleged harassment campaign against plaintiff. Additionally, because, as discussed *supra*, plaintiff's underlying Section 1983 cause of action cannot be established as to the TOH or any of its employees, her claim for conspiracy against these private party defendants must also fail. *See Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) (granting summary judgment in defendants' favor on plaintiff's conspiracy claim because neither of plaintiff's underlying Section 1983 causes of action could be established). Accordingly, the Court grants summary judgment in favor of the AMD Defendants on plaintiff's Section 1983 conspiracy claim.[12]

e. Matco Defendants

Again, plaintiff asserts that the non-TOH defendants (which presumably includes the Matco Defendants) are liable under Section 1983 because they "assist[ed]" the TOH in carrying forth its harassment campaign against plaintiff. (Third Am. Compl. ¶ 90.) In a conclusory fashion in her opposition to the Matco Defendants' motion for summary judgment, plaintiff argues that these private actor defendants "were willful participants in joint activity involving agents who were acting under color of state law." (Pl.'s Mem. of Law in Opp'n to Summ. J. Mot. made by Matco Defs.' at 20.) As with the AMD Defendants, plaintiff has not directed the

Court to any evidence to demonstrate that a rational jury could find a conspiracy between the Matco defendants and the TOH or its employees. Any evidence that plaintiff has introduced suggesting that Matco breached its contract with plaintiff, or that Matco authorized an unlicensed plumber to work on her residence, has no bearing on whether plaintiff has sufficiently alleged a class-of-one claim. Accordingly, the Matco Defendants' motion for summary judgment on plaintiff's Section 1983 claim is granted.

B. State Law Claims

Plaintiff's complaint also asserts numerous causes of action under New York State law. Having determined that plaintiff's federal claim does not survive summary judgment, the Court concludes that retaining jurisdiction over any remaining state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*,

---

[12] Although it is unclear from plaintiff's submissions, the Court has assumed that plaintiff is asserting her conspiracy claims against DiSabato as a private party, due to his role as a shareholder of AMD. For the reasons set forth *supra* Part III.2.c, any claims against DiSabato in his role as a part-time employee of the TOH as a member of the PEB must also be dismissed.

514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive summary judgment. Accordingly, given that the Court has determined that plaintiff's Section 1983 claim does not survive summary judgment and has declined to exercise supplemental jurisdiction over the remaining state law claims, the case is, therefore, remanded to state court where it began. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("We conclude that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.").

IV. CONCLUSION

For the foregoing reasons, the Court grants the TOH's motion for summary judgment, Salute's motion for summary judgment, the AMD Defendants' motion for summary judgment, and the Matco Defendants' motion for summary judgment in their entirety as to plaintiff's federal claim. The Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, and remands the case to state court. The Clerk of the Court shall enter judgment accordingly and remand the case to state court.


SO ORDERED.


_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 29, 2013
       Central Islip, NY

* * *

The attorney for the plaintiff is James M. Maloney, 33 Bayview Avenue, Port Washington, NY 11050. The attorneys for the Town of Hempstead are Laurel R. Kretzing, and Lisa A. Cairo, of Jaspan Schlesinger LLP, 300 Garden City Plaza, Garden City, New York 11530. The attorney for the AMD Defendants is David J. Sutton, 65 Hilton Avenue, Garden City, New York 11530. The attorneys for Salute are Michael P. Siravo and Erik W. Centner, of Bee Ready Fishbein Hatter & Donovan, LLP, 170 Old Country Road, Suite 200, Mineola, New York 11501. The attorney for the Matco Defendants is Mark A. Pazavecchia, of Panzavecchia & Associates, PLLC, 1050 Franklin Avenue, Suite 302, Garden City, NY 11530.